**Janet H. McHUGH, Plaintiff–Appellee,**

v.

**UNIVERSITY OF VERMONT; Christopher Wheeler; James P. Alexander; and United States of America (U.S. Army), Defendants,**

**Christopher Wheeler, Defendant–Appellant.**

No. 1694, Docket 91–6062.

United States Court of Appeals, Second Circuit.

Argued June 11, 1991.

Decided June 4, 1992.

Jacob M. Lewis, Civil Div., Dept. of Justice, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., George J. Terwilliger, III, U.S. Atty., Barbara L. Herwig, Civil Div., Dept. of Justice, Washington, D.C., of counsel), for defendant-appellant.

Michael J. Gannon, Burlington, Vt. (Pierson, Wadhams, Quinn & Yates, of counsel), for plaintiff-appellee.

Before: FEINBERG, NEWMAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

This appeal involves the power of the United States to substitute itself as a defendant for a federal employee by certifying that acts of sexual and religious harassment allegedly committed by the employee were within the scope of his employment. Judge Parker held that Major Christopher Wheeler, United States Army, was acting outside the scope of his employment in committing the alleged acts and declined to substitute the United States and to dismiss the action against him, 758 F.Supp. 945. We affirm.

1. *The Complaint and Substitution Motion*

Janet H. McHugh was a secretary at the University of Vermont. From February to July 1987, she was assigned to Wheeler, an instructor in the Department of Military Studies. She alleges that Wheeler engaged in several acts of sexual and religious harassment during that period. More than

two years after those acts, McHugh brought suit in state court against the University, Lt. Col. James P. Alexander and Wheeler. Various federal claims were alleged, and the University removed the action to the District of Vermont.

On the only claim relevant here, McHugh's original complaint alleged that "[p]laintiff was sexually and religiously harassed by a co-worker, Major Christopher Wheeler," and, that, after complaining to Wheeler's supervisor, Lt. Col. Alexander, she was discharged in retaliation. On August 22, 1990, Acting United States Attorney Charles Caruso, pursuant to authority delegated by the Attorney General, 28 C.F.R. § 15.3 (1991), certified that Alexander and Wheeler were acting within the scope of their employment at the time of the incidents alleged in the complaint. Based on this certification, Alexander and Wheeler moved, pursuant to 28 U.S.C. § 2679(d)(2) (1988), *see* Note 3, *infra,* to substitute the United States as defendant and then to dismiss the complaint against them. In the alternative, they moved for a more definite statement of McHugh's allegations. On November 12, 1990, McHugh, with the district court's permission, filed an amended complaint. The amended complaint alleged in pertinent part:

5. On or about the week of February 17, 1987, Plaintiff began work as a secretary III in the Military Studies Department of [the University of] Vermont.

6. There, she was subjected to callous and insulting remarks of both religious and sexual nature, creating a hostile working environment. Major Christopher Wheeler was a co-worker and/or immediate supervisor. Major Wheeler repeatedly joked about Plaintiff's contracting AIDS, stating that he hoped she would be able to avoid infection over the summer while he was away at camp. Major Wheeler repeatedly suggested to Plaintiff that she must be living with someone. On occasion, Major Wheeler provided his definition of a "secretary" as a paid whore. Major Wheeler observed that it was "a good day to watch Catholic babies burn." Major Wheeler

produced and sent to Plaintiff a print-out which stated:

"Dear Mrs. McHugh,

As your printer, I want to thank you for all the TLC!!! But, my ribbon is tired and old. Please buy me a new one!! I will make my kids Catholic if you do!!"

\*   \*   \*   \*   \*   \*

7. Major Wheeler's conduct created a hostile work environment and caused severe emotional, and resulting physical, harm to Plaintiff.

8. Plaintiff complained about this behavior to her supervisor and Major Wheeler's supervisor, Lt. Col. James P. Alexander, pursuant to the UVM "Policy Statement on Sexual Harassment of Faculty & Staff," . . . .

9. Plaintiff was fired by Lt. Col. Alexander in retaliation for her complaints against Major Wheeler.

With regard to the motion to substitute the United States, Judge Parker reviewed the certification as to scope of employment *de novo.* Applying Vermont law, he held that Alexander was acting within the scope of his employment and substituted the United States as a defendant. McHugh does not appeal from this ruling. However, he also held that the alleged remarks were outside the scope of Wheeler's employment and that McHugh's claims against him should proceed to trial.

Wheeler appealed. Because he claims an immunity from trial as well as from liability, we have appellate jurisdiction under the so-called collateral order doctrine. *Yalkut v. Gemignani,* 873 F.2d 31, 34 (2d Cir. 1989); *see also Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). Wheeler argues that the district court erred in reviewing the certification *de novo* and, alternatively, that the statements he made to McHugh fell within the scope of his employment. Accordingly, he asks that the United States be substituted for him pursuant to the provisions of the Westfall Act.

**70**

### 2. *The Westfall Act*

Before the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), it was believed that "the general rule applicable to federal employees was that they were absolutely immune from personal liability in State common law tort actions for harm that resulted from activities within the scope of their employment." H.R.Rep. No. 700, 100th Cong., 2d Sess. 2, *reprinted in* 1988 U.S.C.C.A.N. 5945, 5946. However, in *Westfall* the Court held that "absolute immunity from state-law tort actions [would be] available only where the conduct of federal officials is within the scope of their official duties *and* the conduct is discretionary in nature." 484 U.S. at 297–98, 108 S.Ct. at 584–85. Apprehensions arose that *Westfall*'s modification of the standards for immunity would sharply increase the exposure to liability of federal employees, particularly with regard to lower-level employees who might have considerable difficulty establishing that they were exercising governmental discretion.

To remedy the situation, Congress passed the Westfall Act, or the Federal Employees Liability Reform and Tort Compensation Act of 1988. Pub.L. No. 100–694, 102 Stat. 4563 (amending the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1988) ("FTCA")). According to the House Report, the Act was intended "to return Federal Employees to the status they held prior to the *Westfall* decision." H.R.Rep. No. 700 at 4, 1988 U.S.C.C.A.N. at 5947.

We briefly summarize the Westfall Act's provisions. Section 2679(b)(1) provides that the remedy against the United States under the FTCA for tortious acts committed by employees acting within the scope of employment is exclusive of any other civil action or proceeding against the employee.[1] Section 2679(d)(1) provides that when the Attorney General certifies that the tortious acts alleged against a federal employee were committed while the employee was acting within the scope of employment, the United States is to be substituted as defendant for the employee.[2] Section 2679(d)(2) provides that, in actions pending in a state court, the United States be substituted as defendant upon certification by the Attorney General that the employee was acting within the scope of employment and that the case be removed to federal court.[3] Section 2679(d)(3) provides that, in the event the Attorney General refuses to certify that the employee was acting within the scope of employment, the employee may petition the court for judicial review of the certification decision. If the action is pending in a state court, the Attorney General may remove it to federal court. In the event that the district court finds that the employee was acting outside the scope of his employment, the case shall be remand-

---

1. Section 2679(b)(1) reads in pertinent part:
   The remedy against the United States ... for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee....
   28 U.S.C. § 2679(b)(1).

2. Section 2679(d)(1) reads:
   Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.
   28 U.S.C. § 2679(d)(1).

3. Section 2679(d)(2) reads in pertinent part:
   Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident.... Any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court.... Such action or proceeding shall be deemed to be an action or proceeding brought against the United States ... and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.
   28 U.S.C. § 2679(d)(2).

ed to the state court.[4] The Act contains no express provision for a tort plaintiff's challenge to the certification.

Finally, Section 2679(d)(4) provides that upon certification, the action shall proceed in the same manner as any FTCA suit but "shall be subject to the limitations and exceptions applicable to those actions."[5] It is this seemingly innocent provision that creates difficulties. Whereas rules regarding substitution of parties generally affect formalities rather than substantive rights, *see, e.g.,* Fed.R.Civ.P. 25, advisory committee note (1961). ("Automatic substitution ... is distinct from and does not affect any substantive issues which may be involved in the action."). Section 2679(d)(4), in effect, states that the substituted defendant, the United States, may take advantage of numerous limitations on tort actions based on sovereign immunity that are not available to an individual defendant. These include a right to trial by the court, a two-year federal statute of limitations, the unavailability of punitive damages, and a bar to certain kinds of tort actions, including "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *See* 28 U.S.C. § 2680(h). Substitution of the United States as the defendant, therefore, not only immunizes the governmental employee but also may deprive the plaintiff of important procedural and substantive rights under state law.

### 3. *Reviewability of the Certification*

The heart of the dispute in the instant matter is whether or to what extent a certification as to scope of employment under the Westfall Act may be reviewed and rejected by the district court. This question is the crux because, should the government be substituted for Wheeler, it will undoubtedly move in the district court to dismiss the complaint on the ground that it was filed more than two years after the accrual of McHugh's claims and is therefore time-barred under the FTCA's statute of limitations. *See* 28 U.S.C. § 2401(b) (1988).[6] (The pertinent Vermont limitations period is three years.) McHugh thus faces the prospect of losing her action against Wheeler and the United States. (This of course accounts for the unusual but not unique posture of this case in which a plaintiff is resisting the substitution of a deep-pocket defendant.) Moreover, even if some of her claims against the United States might survive on some principle of equitable tolling—an issue we need not address—she would not be entitled to a jury trial in her action against the government.

Courts that have addressed the reviewability of disputed scope-of-employment certifications have uniformly held them to be subject to review. *See Snodgrass v. Jones*, 957 F.2d 482 (7th Cir.1992) (Attorney General's scope of employment certification subject to *de novo* review); *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538 (11th Cir.1990) (district court should exer-

---

**4.** Section 2679(d)(3) reads in pertinent part:

In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States ..., and the United States shall be substituted as the party defendant.... In the event the petition is filed in a civil action or proceeding pending in a State court, the action or proceeding may be removed without bond by the Attorney General to the district court of the United States for the district and division embracing the place in which it is pending. If, in considering the petition, the

district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court.

28 U.S.C. § 2679(d)(3).

**5.** Section 2679(d)(4) reads:

Upon certification, any action or proceeding subject to paragraph (1), (2), or (3) shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions.

28 U.S.C. § 2679(d)(4).

**6.** McHugh's claim for tortious interference with contract rights would be barred under 28 U.S.C. § 2680(h).

cise *de novo* review of certification decision); *Melo v. Hafer,* 912 F.2d 628 (3d Cir.1990) (district court may review scope-of-employment certification decision), *aff'd on separate grounds,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Nasuti v. Scannell,* 906 F.2d 802 (1st Cir.1990) (district court should exercise its customary jurisdiction over scope-of-employment disputes that call into question its subject matter jurisdiction); *Arbour v. Jenkins,* 903 F.2d 416 (6th Cir.1990) (plaintiff dissatisfied with scope certification may challenge certification judicially); *Petrousky v. United States,* 728 F.Supp. 890 (N.D.N.Y. 1990) (due process precluded court from granting deference to certification on scope of employment); *Baggio v. Lombardi,* 726 F.Supp. 922 (E.D.N.Y.1989) (district court ordered evidentiary hearing on scope-of-employment issue). Some courts have said that substitution is mandatory upon certification, *see Mitchell v. Carlson,* 896 F.2d 128, 136 (5th Cir.1990) (district court *required* to substitute the United States for individual defendant following certification), and *Aviles v. Lutz,* 887 F.2d 1046 (10th Cir.1989) (mandatory language of § 2679(d) does not permit federal court to review certification), but they are factually distinguishable in that scope of employment was not a disputed issue.

■ We believe that a scope-of-employment certification should be reviewed *de novo* for purposes of substituting the United States as a defendant and precluding an action against the federal employee. Section 2679(d)(1) states that upon certification the proceeding "shall be deemed an action against the United States" and that "the United States shall be substituted as the party defendant." Although use of the word "shall" suggests that the certification is binding on the court, *see Aviles,* 887 F.2d at 1049, we nevertheless believe that the

text of the Westfall Act, viewed as a whole, is ambiguous.

Under the Westfall Act, the Attorney General's certification serves two purposes. First, it is the basis for removal of state court actions to federal court. Second, it is the basis for the substitution of the United States as a defendant and for the resultant immunization of the federal employee. With regard to removal, Section 2679(d)(2) provides that a certification "conclusively establish[es] scope of office or employment for purposes of removal." In contrast, Section 2679(d)(1), which provides for substitution and triggers the preclusive effect of Section 2679(b) on actions against the federal employee, contains no explicit language conferring conclusive status upon the Attorney General's certification. Had Congress intended to render the certification conclusive for purposes other than removal, it knew how to do so. *Cf. Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) ("[W]hen Congress wished to provide a private damage remedy, it knew how to do so and did so expressly.") (Rehnquist, C.J.).

The background of law against which the Westfall Act was enacted provides support for the view that the Attorney General's certification is subject to judicial review. The Westfall Act was an amendment to the Federal Drivers Act, Pub.L. No. 87–258, 75 Stat. 539 (1961) (codified at 28 U.S.C. § 2679 ("Old Section 2679")). Like the Westfall Act, Old Section 2679 contained provisions enabling the Attorney General to certify that a federal employee was acting within the scope of employment. However, it was limited to tort actions arising out of motor vehicle accidents.

Old Section 2679(b) provided that actions against the United States arising out of motor vehicle accidents involving federal employees acting in the scope of their employment were exclusive of any action against the employee.[7] Old Section 2679(d)

---

7. Old Section 2679(b) read:

The remedy by suit against the United States as provided by section 1346(b) of this title for damage to property or for personal injury, including death, resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim. 28 U.S.C. § 2679(b) (1982).

provided for removal of a tort action brought against a federal employee in state court upon certification by the Attorney General that the employee was acting in the scope of employment. It also provided for a remand to the state court should the district court determine that the employee was not acting within the scope of employment.[8]

Thus, under the Federal Drivers Act, "the trial judge determined the scope of employment issue as a matter of law." *Petrousky v. United States*, 728 F.Supp. 890, 891 (N.D.N.Y.1990) (citing *Levin v. Taylor*, 464 F.2d 770, 771 (D.C.Cir.1972)). If, after removal, the district court found that the federal driver was not acting within the scope of his employment, the action was to be "remanded to the state court where it is to be recommenced against the federal driver in his individual capacity." *McGowan v. Williams*, 623 F.2d 1239, 1242 (7th Cir.1980) (citing 28 U.S.C. § 2679(d)); *Van Houten v. Ralls*, 411 F.2d 940, 942 (9th Cir.), *cert. denied*, 396 U.S. 962, 90 S.Ct. 436, 24 L.Ed.2d 426 (1969); *Vantrease v. United States*, 400 F.2d 853, 855 (6th Cir.1968). And, prior to the passage of the Westfall Act, a number of federal courts had found that the federal employee's actions were outside the scope of employment. *See Croes v. United States*, 726 F.2d 31 (1st Cir.1984) (federal employee, on detour between home and site of meetings, not acting within scope of employment); *Gupton v. United States*, 799 F.2d 941 (4th Cir.1986) (serviceman participating in military-sponsored Self-Move program, driving ordinary commercial-rental vehicle while moving between cities, not acting within scope of employment); *Tucker v. United States*, 385 F.Supp. 717 (D.S.C.1974) (serviceman who checked out military vehicle

under false pretenses and who consumed alcohol prior to driving the vehicle not acting within the scope of employment).

The Westfall Act modified the Federal Drivers Act in several respects. First, Section 2679(b) was amended to extend the immunity to all tort actions against federal employees. Second, Section 2679(d)(2) rendered the Attorney General's certification conclusive for purposes of removal. Third, Section 2679(d)(3) added provisions that, if certification is refused, allow federal employees to petition the court in which the action is pending, state or federal, to find that they were acting within the scope of employment. These provisions also empower the Attorney General to remove the action, if in state court, to the district court upon such a petition. If the district court finds that the acts were not within the scope of employment, the case is to be remanded to state court. Fourth, in Section 2679(d)(1), the Westfall Act extended the certification procedure to all cases, including those already in federal court. This extension was necessitated because the refusal to make such a certification is the trigger allowing federal employees to petition the court for a certification.

Viewing the Westfall Act in its entirety, we find no evidence that Congress intended to eliminate judicial determination of the scope of employment issue, except with regard to removal, as was the practice under the Federal Drivers Act. Indeed, such an elimination would be extremely anomalous in light of the Westfall Act's empowering of federal employees to challenge a refusal by an Attorney General to certify scope of employment.

The legislative report accompanying the Westfall Act sheds no light on the question, H.R.Rep. No. 100, although the hear-

---

**8.** Old Section 2679(d) read:

Upon a certification by the Attorney General that the defendant employee was acting within the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place wherein it is pending and

the proceedings deemed a tort action brought against the United States under the provisions of this title and all references thereto. Should a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy by suit within the meaning of subsection (b) of this section is not available against the United States, the case shall be remanded to the State court. 28 U.S.C. § 2679(d) (1982).

ings on the proposed legislation are replete with statements indicating that the judicial determination of the scope of employment would continue as under the Federal Drivers Act. *See S.J. & W. Ranch,* 913 F.2d at 1541 (discussing with extensive quotations legislative history in support of judicial review of certification).

■ Finally, judicial review of a certification of scope of employment must be inferred to avoid serious constitutional problems. *See id.* at 1541–42. State tort claims are property subject to constitutional protection. *Barrett v. United States,* 798 F.2d 565, 575 (2d Cir.1986) (vested tort right of action is property entitled to constitutional protection) and cases cited therein. Where a tort is committed within the scope of a federal employee's employment, we will assume for purposes of this matter— but do not decide—that Congress may immunize the particular employee by substituting the United States as defendant. We may also assume that Congress may provide a broadly encompassing definition of scope of employment, although it has not done so. *See* Note 9 *infra.* Such a bestowal of a broad immunity on the government's agents may be thought necessary to the efficiency of government service even if the bestowal causes plaintiffs to lose state rights.

Before such property rights can be eliminated, however, a plaintiff is entitled to a due process hearing on whether the federal employee was acting within the scope of employment. *See, e.g., Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). There is no valid reason for immunizing federal employees for torts clearly committed outside the scope of their federal employment and thus no valid reason to deny plaintiffs a hearing on the scope of employment issue. Indeed, the government's position is rather curious in light of the undeniable fact that it retains the right to contest a claim that alleged acts were within the scope of federal employment and to ask a court to dismiss an action brought against it under the FTCA. *See, e.g., Tucker,* 385 F.Supp. 717, 720–22. Nor is there a reason to give federal employees who are sued a judicial hearing on the scope of employment, as the Westfall Act explicitly does, while denying it to those who have sued them. Unless the Westfall Act is read to provide judicial review of the Attorney General's certification of scope of employment, therefore, it will be vulnerable to a powerful constitutional attack.

Certainly, there is no reason to regard the certification process itself as according due process to plaintiffs. Indeed, plaintiffs who sue a federal employee neither receive notice of nor participate in the Attorney General's decision to certify, or not to certify, scope of employment. Moreover, in many cases the Attorney General will have little incentive to resist certification because the underlying tort action cannot be brought against the United States under the FTCA. In the instant matter, where the two-year statute of limitations had run, the certification was signed before the substance and context of Wheeler's alleged actions were known and was based solely on the conclusory allegations of the original complaint. Indeed, after certification, the government, which was representing Wheeler, moved for a more definite statement of the allegations against him as an alternative to the motion to substitute.

■ We therefore conclude that a district court may review *de novo* an Attorney General's certification of scope of employment under the Westfall Act. Such review is triggered by the government's motion for substitution and opposition papers from the plaintiff that allege with particularity facts relevant to the scope-of-employment issue. The allegations of tortious conduct, such as the statements attributed to McHugh, should be read in the light most favorable to the plaintiff. That is to say, the government may not deny that acts were within the scope of employment by denying that the acts occurred. The context of the alleged acts that is relevant to the scope of employment issue is a matter of fact to be determined by the district court, however, after an appropriate factual hearing. Whenever scope of employ-

ment is disputed, substitution should be made only if the court finds that the alleged acts were within the scope of employment.

In the instant matter, the parties may dispute whether Wheeler conducted himself as alleged, but we assume that plaintiff's allegations are true for purposes of this proceeding. The context in which the remarks were made—while both McHugh and Wheeler were at work—is not disputed. The district court, applying Vermont scope-of-employment law,[9] found that Wheeler was acting outside the scope of his employment when he allegedly made the remarks to McHugh. We agree with the district court.

■ Under Vermont law, an employer is not liable for an employee's act unless "the act was done in furtherance of the master's business." *Anderson v. Toombs*, 119 Vt. 40, 117 A.2d 250, 253 (1955). It can hardly be contended that Wheeler's alleged conduct furthered the business of the United States government. There is, moreover, a Vermont trial court decision squarely holding that, absent employer condonement or involvement, sexual harassment of one employee by another is outside the scope of employment. *See Vermont v. R.S.D. Leasing*, No. S 882–86 CnC., slip op. at 7 (Chitenden Super.Ct. April 28, 1988). Similar reasoning would apply to religious harassment.

Wheeler argues that his alleged conduct was within the scope of employment because it was within that scope for him to talk with McHugh, either to give instructions or to avoid the awkwardness of silence prevailing except for work-related conversation. Whether that is a preferable definition of scope of employment is something we need not address because the only issue before us is what Vermont law is, not

what it should be. Given present Vermont caselaw, the tea leaves may be sparse, but they clearly convey a message that differs from that argued by the government.

We therefore affirm.

---

**9.** Technically, scope-of-employment questions regarding members of the military would appear to be governed by federal law under 28 U.S.C. § 2671. Section 2671 states that scope of employment with regard to the military "means acting in the line of duty." 28 U.S.C. § 2671. "Line of duty" for members of the United States armed forces would seem unquestionably a matter of federal law. However, courts have viewed military personnel as bound by state law and have looked to pertinent state law to define tortious behavior. *See McCall v. United States*, 338 F.2d 589 (9th Cir.), *cert. denied*, 380 U.S. 974, 85 S.Ct. 1334, 14 L.Ed.2d 269 (1965). Whether state law would apply where considerations of combat or military discipline were implicated might be another question. In any event, both parties ask us to apply Vermont law.