Marilyn A. KIMBRO, Appellee,

v.

Dolores VELTEN, Department of Veterans Affairs, and United States of America, Appellants.

No. 92–5007.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 21, 1994.

Decided Aug. 5, 1994.

Michael T. Ambrosino, Asst. U.S. Atty., Washington, DC, argued the cause for appellants. With him on the briefs were Eric H. Holder, Jr., U.S. Atty., and John D. Bates, R. Craig Lawrence, and Michael J. Ryan, Asst. U.S. Attys., Washington, DC.

Grace Y. Chung, Washington, DC (student counsel pursuant to Rule 46 of the General Rules of this Court) argued the cause for appellee. With her on the briefs were Steven H. Goldblatt (appointed by the Court), John J. Hoeffner, Supervising Atty., Washington, DC, and Sandra L. Massey, Student Counsel.

Before: SILBERMAN, BUCKLEY, and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellants challenge the district court's orders, which resubstituted defendant Velten in lieu of the United States and remanded to the Superior Court of the District of Columbia. We reverse and remand for the district court to conduct an evidentiary hearing to ascertain whether Velten acted within the scope of her employment at the time of the alleged incident.

## I.

Marilyn Kimbro filed a $2,000 claim in the Small Claims and Conciliation Branch of the Superior Court of the District of Columbia against fellow Department of Veteran Affairs employee Dolores Velten for assault and battery. Kimbro's amended complaint alleged that Velten "without provocation and without the consent of [Kimbro], viciously struck the Plaintiff on the right arm." The U.S. Attorney, pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(2) (1988) (the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, § 6, 102 Stat. 4563, 4564–65 (1988)), and 28 C.F.R. § 15.3 (1993), certified that Velten had been acting within the scope of her employment when the incident allegedly took place. As a result of the certification, the case was removed to the federal court and the United States was substituted as a defendant. The government then moved to dismiss the action on the grounds that Kimbro had no claim under the Federal Tort Claims Act (FTCA). Kimbro opposed the motion and moved to remand the case to superior court, claiming that, as Velten was acting outside the scope of her employment when she assaulted Kimbro, the Attorney General's certification was in error.

Velten filed a sworn declaration claiming that she did not recall ever touching Kimbro and that at the time of the alleged incident she was performing an official duty. William Sandoval, the supervisor of both Velten and Kimbro, also submitted a sworn declaration stating that it was within Velten's scope of employment to move about the hallway where Kimbro was allegedly struck and that all employees are regarded as performing official duties while in the hallway. Kimbro responded with an affidavit stating that while she was attempting to make a copy of Velten's timecard, Velten obstructed her path and then struck her on the right arm. Kimbro argued that this intentional assault could not possibly be within the scope of Velten's employment.

The district court issued an order dismissing the United States as defendant, resubstituting Velten, and remanding the case to the superior court. 767 F.Supp. 6. The court did not decide whether Velten had been acting within the scope of employment (or whether an assault had, in fact, occurred). Instead, the court reasoned that if the assault had occurred, it could not be within the scope of employment, and if the assault did not occur (of course), no tort took place. Under either scenario, the FTCA was not implicated. The district court concluded that the United States was an improper defen-

dant, ordered that Velten be resubstituted, and remanded the case to the superior court for further proceedings. After the government unsuccessfully moved for reconsideration, the case files were transferred to the superior court and the government appealed.

## II.

▪ Kimbro (whose case was effectively presented by appointed counsel) challenges our jurisdiction to review the district court's order. She claims first that 28 U.S.C. § 1447(d) (1988), which provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," bars review. Although the government has not expressly appealed the remand order, Kimbro argues that the two orders (the remand order and the resubstitution order) are so interrelated as to be functionally the same. The answer as to who is the proper defendant necessarily resolves the question as to which is the proper forum. If we should conclude that the district court erred in resubstituting Velten as defendant, Kimbro argues, the government would simply remove the case again to district court, and thus would have accomplished indirectly what the statute bars directly.[1]

The Supreme Court long ago, however, held that § 1447(d) does not bar appellate review of an order made in conjunction with a remand to state court, *even one that was a basis for the decision to remand.* In *Waco v. United States Fidelity & Guar. Co.,* 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934), a determination that a party who supplied the basis for diversity jurisdiction had been improperly joined by cross-claims was held appealable even though the party's dismissal was included in a single order that also directed a remand. The dismissal decision was thought to be analytically anterior to and separate from the decision to remand. *See Waco,* 293 U.S. at 143, 55 S.Ct. at 7. We agree with the Third and Fifth Circuits, which have determined that the same principle applies to the situation presented in this case. The resubstitution issue "logically precedes the question of remand." *Aliota v. Graham,* 984 F.2d 1350, 1353 (3rd Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993); *Mitchell v. Carlson,* 896 F.2d 128, 132–33 (5th Cir.1990). The resubstitution decision hinged upon appealable issues of substantive law and is thus separable from the unreviewable jurisdictional question of the proper forum. *See In Re TMI Litigation Cases Consolidated II,* 940 F.2d 832, 843–44 (3d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992).

▪ We also agree with both Circuits that, alternatively, the resubstitution order should be regarded as a reviewable final order within the meaning of 28 U.S.C. § 1291 (1988), because it is covered by the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The resubstitution order easily meets the three criteria of *Cohen:* it conclusively decided a disputed issue, the issue presented is completely separate from the merits, and it would be effectively unreviewable on appeal from a final judgment. *See Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225–26. This last because, if resubstituted, Velten would be denied the full protection of the Westfall Act, which is designed to confer immunity not just from judgment but from trial. *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985) (holding that district court rejection of defendant's qualified immunity claim was immediately appealable under the collateral order doctrine as the immunity "is effectively lost if a case is erroneously permitted to go to trial.").

Recognizing, apparently, that precedent runs strongly against her, Kimbro relies more heavily on an alternative jurisdictional argument based on one of our own decisions. *See Starnes v. McGuire,* 512 F.2d 918, 935 (D.C.Cir.1974) (en banc). We said in *Starnes* that "once a record is transferred to a *permissible* forum in another *district,* this court

---

1. In *Aliota v. Graham,* 984 F.2d 1350 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993), a similar case, the government did directly appeal the remand order as

well by *writ of mandamus.* The Third Circuit, although regarding the question as difficult, granted the writ. *See id.* at 1354–57.

loses jurisdiction over the matter." *See id.* (emphasis added).[2] Of course, we are not reviewing the "transfer" order or remand by the district court as such, but rather the resubstitution decision. *Starnes* speaks only of "physical transfer of the original papers in a case ... depriv[ing] the transferor circuit of jurisdiction *to review the transfer."* *Starnes,* 512 F.2d at 924 (emphasis added).

In any event, we do not think that *Starnes* forecloses *appeal* in this case, because for jurisdictional purposes we must assume that the government is correct as to its argument on the merits. And that argument is precisely that the superior court under the circumstances was not a "permissible" forum—which is the prerequisite to the application of *Starnes. See infra* Part III. In *Starnes,* we noted that "[w]here the transfer is to a forum that is not permitted under Section 1404(a) (*i.e.,* a forum where the action could not have been brought) it is possible to argue that the transferor court was *without power* to order the transfer and that therefore the transferor court never lost jurisdiction over the action." *Starnes,* 512 F.2d at 924 n. 6 (emphasis added). We therefore turn to the main argument—whether the district court erroneously declined to decide the scope of employment issue.

### III.

The Westfall Act was explicitly designed to nullify the Supreme Court's decision in *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). Prior to the Court's opinion, the government had asserted (generally successfully) that its employees were absolutely immune to suits for damages under state tort law so long as they were acting within the scope of their official duties. The Supreme Court held in *Westfall,* however, that this immunity attached only if the employees' conduct in question was within the scope of employment *and* discretionary in nature. *See Westfall,* 484 U.S. at 297–98, 108 S.Ct. at 584–85. Congress responded with the Westfall Act to return government employees to their status before the Court's

decision. *See Aliota v. Graham,* 984 F.2d 1350, 1355 (3d Cir.1993). In the Act, the government explicitly consented to suits against the United States for certain torts committed by federal employees "while acting within the scope of [their] office or employment." 28 U.S.C. § 2679(b)(1) (1988).

A tort action against federal employees, of course, can be brought in either state or, under diversity jurisdiction, federal court. If the action is brought in federal court and the Attorney General certifies that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," the United States is to be substituted as the party defendant because the action "shall be deemed an action against the United States." *Id.* § 2679(d)(1). If, on the other hand, the action against the federal employee is brought in state court, upon the Attorney General's same certification, the action is automatically removed to federal court and the United States is similarly substituted as party defendant. The statute does not explicitly mention any authority granted to a federal judge to review the Attorney General's certification (it might be thought to imply the contrary by stating that the action thereafter *"shall be deemed* an action against the United States"). It does provide, however, that the Attorney General's certification "shall conclusively establish the scope of office or employment *for purposes of removal." Id.* § 2679(d)(2) (emphasis added). If the Attorney General *refuses* to certify that the employee defendant was acting within the scope of his office, the Act provides that the employee can nevertheless petition the court itself to "find and certify" that the employee was acting within the scope of his office. Once such a petition is filed, the United States is substituted as defendant and the case may be removed by the Attorney General from a state court if it was there commenced. But, if the issue is decided in federal court and the district judge determines that the employee was not acting within the

---

**2.** The *Starnes* rule actually has been applied only where a case has been transferred to another federal district court; the parties dispute wheth-er it is germane when a case is remanded to a D.C. court. Different policy considerations forestall review of transfers among federal courts.

scope of his office the case "shall be remanded to the State court." *Id.* § 2679(d)(3).

The government initially took the position that the language and structure of the Act authorized no judicial review of the Attorney General's certification; a district court could "overrule" the Attorney General only if she refused to certify and the defendant employee sought the court's own certification. But after several circuits disagreed, the government acquiesced and, indeed, even here disavowed a favorable Fourth Circuit opinion *en banc*. *See Johnson v. Carter*, 983 F.2d 1316, 1320–21 (4th Cir.), *cert. denied*, —— U.S. ——, ·114 S.Ct. 57, 126 L.Ed.2d 27 (1993). That acquiescence left the following questions: what is the legal effect of certification on the issue of scope of employment, how does that certification relate to the merits of the case, and what is the continuing relationship, if any, between the federal court and a state court in a case that had been removed based on the Attorney General's certification?

These questions tend to arise in cases of alleged intentional torts. *See, e.g., Melo v. Hafer*, 13 F.3d 736, 740 (3rd Cir.1994) (defamation and interference with contractual rights); *Wood v. United States*, 995 F.2d 1122, 1123–24 (1st Cir.1993) (en banc) (sexual harassment); *Johnson v. Carter*, 983 F.2d at 1318 (libel, slander, and intentional infliction of emotional distress); *Wang v. United States*, 947 F.2d 1400, 1401 (9th Cir.1991) (intentional tort and breach of contract); *cf. Nasuti v. Scannell,* 906 F.2d 802, 805 (1st Cir.1990) (negligent operation of a motor vehicle, assault and battery). Although the tort and agency laws of the states vary, generally an intentional tort is regarded as falling outside the scope of employment—at least if the employee's conduct "is different in kind from that authorized ... or too little activated by a purpose to serve [the employer]." *See* Restatement of Agency (Second), § 228 (1958). And an allegation of intentional force, as in this case, does not fall within the scope of employment if "unexpectable" by the employer. *See id.* Therefore, the scope question and the merits in these sorts of cases often overlap—sometimes exactly,

which brings us to the core problem on which the circuits are split.

■ The government, faced with an allegation of an intentional tort on the part of its employee, if it concludes that the tort did not take place, will understandably assert that the employee was acting within his or her scope of office or employment—in order to confer immunity on the employee—and deny the tort occurred. That is what happened in this case. The government maintains that under the statute the district court must treat the Attorney General's initial certification as *prima facie* evidence that the defendant was acting within the scope of her office or employment, putting the plaintiff to the burden of producing specific facts to rebut the certification. The government also contends that under the statute the district judge must herself decide the scope of employment issue if there are disputed issues of material fact. That means the "scope" issue may not be given to a jury in federal court and it, certainly, may not be remanded to a state court.

That issue cannot be remanded to the state court, according to the government, because the statute specifically forbids it; 28 U.S.C. § 2679(d)(2), it will be recalled, provides that the Attorney General's certification "shall conclusively establish the scope of office for purposes of removal." The government contends that provision actually constitutes a grant of exclusive subject matter jurisdiction to the federal court *over the entire case,* including whatever issues might remain after the scope of employment question is decided. *But see Nasuti*, 906 F.2d at 814 (once defendant employee's conduct is determined to fall outside the scope of employment, case is directly remanded to state court). Putting aside the post-scope issues and proceedings, the language of the statute, specifically § 2679(d)(2), does seem to us to *at least* preclude a remand to the state court *before* the scope issue is resolved.

Kimbro suggests, in contrast, that the language could be interpreted to mean only that the federal court must ignore state court determinations on the issue of scope prior to removal, not to preclude a *remand* to resolve a scope determination as was done in this

case. We think that construction—distinguishing removal from remand—is quite unconvincing. Congress was obviously using the term "removal" to refer to the respective jurisdiction of the federal and state courts and thus intended that a state court would not be authorized, after an Attorney General's certification, to decide the scope of employment of a federal employee, notwithstanding that this issue is governed by state tort law. That purpose is further revealed by § 2679(d)(3), which permits (but does not require) the Attorney General to remove a case that she initially refused to certify if the defendant employee files a petition in the state court seeking certification. In other words, Congress obviously meant the Attorney General to have the ability to ensure federal judicial adjudication over the issue of scope of employment of federal employees, and therefore, perhaps, even some measure of uniformity—at least as to the nature of federal employment patterns and scope of federal employment—even though various state tort laws were applied.

We conclude, therefore, that the district court acted outside its authority when it remanded the case to the D.C. Superior Court, for however the scope issue is to be properly decided, it must, because of § 2679(d)(2), be decided in federal court. Kimbro argues, as have other plaintiffs in such cases brought in federal rather than state court, that it is all well and good to say the district judge must decide whether an employee was acting within the scope of his or her office, but that this allocation of responsibility assumes that the Attorney General's initial certification conforms to applicable statutory parameters. The Attorney General must certify that the defendant was acting within his scope "at the time of the *incident* out of which the claim arose," and this necessarily means, according to Kimbro and the district court, that the Attorney General must accept *arguendo* that the "incident" or event took place. In support of that argument, Kimbro relies on the *en banc* decision of the First Circuit, *Wood v. United States*, 995 F.2d 1122, 1129 (1st Cir.

1993), and a case in the Second Circuit, *McHugh v. University of Vermont*, 966 F.2d 67, 74–75 (2d Cir.1992).[3]

It should be emphasized, however, that even if we accepted an argument built on *Wood* and *McHugh,* we would still believe that the remand was unauthorized. To hold that as a matter of federal law the Attorney General's certification is defective, as did *Wood,* and therefore that a federal *jury* rather than a *judge* should decide the scope issue does not contradict § 2679(d)(2). Under that section, as we have explained, the Attorney General has statutory authority to keep the scope issue in federal court, but who decides in federal court is not expressly addressed. That does not mean, however, that § 2679(d)(2) is irrelevant to the *Wood* issue (*i.e.,* whether a judge can reject an Attorney General's certification that denies the plaintiff's allegation); as we discuss below, we think that subsection does bear on the proper interpretation of the language describing the Attorney General's certification decision. The treatment of the Attorney General's certification upon *removal* was not, however, considered in the *Wood* or *McHugh* cases because those cases were *brought* or removed to federal court before certification. *See Wood,* 995 F.2d at 1123; *McHugh,* 966 F.2d at 69.

Turning now to the *Wood* issue, the legal dispute focuses first on the statutory language that prescribes the Attorney General's certification: "that the defendant employee was acting within the scope of his office or employment *at the time* of the *incident out of which* the claim arose." Kimbro, echoing the *Wood* majority, asserts that the government's certification that Velten was acting within the scope of her employment was inadequate. In supporting its certification before the district court, the government produced Velten's affidavit claiming that she did not recall even touching Kimbro, but that at the time she was on official duty, as well as Supervisor Sandoval's affidavit, which stated that it was within Velten's duties to

---

**3.** The Third Circuit, in *Melo v. Hafer,* 13 F.3d 736, 746 (3d Cir.1994), is to the contrary, holding that a certification may disavow the occurrence of the alleged incident in whole or in part.

*See also Wood,* 995 F.2d at 1134 (Coffin, Selya, and Boudin, J.J., dissenting); *Wang v. United States,* 947 F.2d 1400, 1402 (9th Cir.1991).

move about the hall where Kimbro allegedly was struck. Kimbro argues that because the government effectively denied that the *incident* ever occurred, that incident cannot logically be deemed within the scope of Velten's employment. Even if the case cannot be remanded to the superior court, then, Velten is not entitled to absolute immunity; Kimbro is instead entitled to a jury determination in federal court to resolve the disputed factual issue—which is really the whole case.

The First Circuit held in *Wood* that, faced with an alleged sexual harassment claim, the Attorney General could not deny that some sort of harm (the "incident") had occurred and still submit an "adequate" certification. *See Wood,* 995 F.2d at 1129. Such an approach, according to the majority, was inconsistent with the most natural reading of the statutory language and, moreover, did not accord with congressional purpose. Congress had wished to grant absolute immunity to the employee defendant only in the *type* of case (normally a negligence claim) where the plaintiff would have a cause of action against the government under the' FTCA under *respondeat superior.* In the *Wood* case—as is true here—if the defendant did engage in the alleged conduct it could not possibly fall within his scope of office. We, like the Third Circuit, *see Melo v. Hafer,* 13 F.3d at 746, think the *Wood* dissenters had the better of the argument.

Finally, to us it is of no moment that the statute refers to "the incident out of which the claim arose." It is an accident of language—a reflection of the most common case—that the statute posits a "happening." In this case the Attorney General concluded, as evidenced by the certificate, that the events claimed by plaintiff did not occur, at least in the form alleged by Wood. But it is not difficult to find here a set of "incidents" or occurrences conceded by everyone: Owens did have a supervisory relationship with Wood, met and talked with her on various occasions and danced with her at an official function. What is disputed is precisely what was said and done on these occasions, much as a government driver and a private plaintiff might give two quite different versions of an accident.

Indeed, we think the Westfall Act would apply even if there were *less* of an "incident" than is indisputably present in this case. For example, surely the statute applies with the same force whether a postal service driver says that he did not hit the plaintiff's car or that he did so but was not at fault. "Incident," in other words, must encompass the possibility that something did not happen as well as the possibility that it did.

*Wood,* 995 F.2d at 1134.

The word "incident," as even the *Wood* majority conceded, *see id.* at 1129–1130, cannot mean that the Attorney General must accept the plaintiff's allegations insofar as it constitutes a characterization of an event. The dissenters thought, we think correctly, that it would be impossible, however, to draw a distinction between a characterization of an incident and whether or not it actually occurred.

[S]uppose Wood said she had been offensively touched but Owens said he touched her only accidentally as he was handing her a stack of correspondence. If the Attorney General then granted a certificate, there would be an "incident" and a clear scope of employment issue. *Presumably the certificate could not be set aside without a district court factual finding.* Why this case should follow a different procedural course is hard to understand.

*Wood,* 995 F.2d at 1136 n. 7 (emphasis added). Still, the majority in *Wood* insisted that the certificate must assume some "harm-causing" event along the same general lines alleged by the plaintiff. *See Wood* at 1129. We disagree.

The exact wording of the statute, after all, calls for the Attorney General to certify that the defendant was acting within his scope of employment *at the time* of the incident. The wording obliges the Attorney General to focus and certify as to the employee's status at the time, not as to the employee's precise behavior. To be sure, if, in either *Wood* or our case, the Attorney General had determined the events as related by the plaintiff actually happened, the certification would not be filed merely because at the time the de-

fendant was otherwise at work. Still, the statutory language describing certification does not preclude a disavowal through certification that the harm-causing event actually occurred.

■ Whatever wording the statute contemplates the certification will include, the statute, in our view, confers no authority on the district court to reject the Attorney General's certification as "inadequate," without itself determining whether the defendant employee was acting within the scope of his employment. It may well be that Congress did not contemplate judicial review of the certification at all, although given the Supreme Court's presumption of judicial review, *see Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511–12, 18 L.Ed.2d 681 (1967); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 2135–36, 90 L.Ed.2d 623 (1986), we certainly understand the government's willingness to acquiesce in *Nasuti* and its disavowal of *Johnson.* Nevertheless, the sort of judicial review implied is not of the certification; it is of the *underlying merits*—whether the employee was or was not acting within the scope of his employment. This is not a case of review of agency action; it is a civil case in which the government is entitled to insist on a federal forum for the ultimate resolution of the scope of employment issue. Therefore, it does not matter, as we read the statute, what the certification actually says—*i.e.*, whether it denies or recharacterizes the plaintiff's allegations of the employee defendant's conduct; its filing simply ensures that a federal court determine whether the employee is entitled to absolute immunity.

Our understanding of the district court's obligation under § 2679(d)(2) follows from § 2679(d)(3), which permits the defendant to gain a scope determination even when the Attorney General refuses to certify. In that subsection, the language does not even refer to the "incident out of which the claim arises," but rather simply states "the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office and employment." It does not appear that

under that route the district judge could possibly refuse to make a finding and, when appropriate, issue a *certification* itself if the employee denied that he had committed the "harm-causing event." We, like the Court of Appeals for the Ninth Circuit, read this subsection as a directive that, where necessary, the court conduct an evidentiary hearing to determine the scope of employment issue. *See Wang v. United States*, 947 F.2d 1400, 1402 (9th Cir.1991); *see also Melo v. Hafer*, 13 F.3d 736, 747 (3d Cir.1994). And Congress certainly could not possibly have intended an employee, whose conduct the Attorney General declined to certify, to have greater immunity protection than one who enjoyed an Attorney General's certification. *Id.*

Recall also, in this regard, the provision which makes the Attorney General's certification conclusive with respect to removal. *See* § 2679(d)(2). The exact wording of the certification under that provision would seem irrelevant; it is flatly conclusive *on the question of jurisdiction.* It would not have made much sense for Congress to have treated the Attorney General's certification—whatever its wording—as conclusive for purpose of determining in which court the case (or at least the issue) is to be heard, yet authorize a federal judge to refuse to give it any legal significance—*i.e.*, to view the plaintiff's pleadings as dispositive of the scope of employment issue for purposes of removal. Regardless of the content of the certification, then, the federal district court must at least conduct an evidentiary hearing on the scope issue.

We are, moreover, unpersuaded by Kimbro's and the First Circuit *Wood* majority's reliance on the legislative history of the Westfall Act to determine proper procedural treatment of certification. We do not think that that history establishes that the sorts of tort allegations Congress wished to immunize federal employees against were precisely those types for which plaintiffs enjoyed causes of action against the government under the Tort Claims Act. As the dissenters in *Wood* pointed out:

In framing the Westfall Act, Congress no doubt had in mind the classic case in which

"the wrongdoing" (if it occurred) was the type for which the government would be responsible under *respondeat superior* doctrine. But a claim of perfect symmetry between the certifiable conduct (under the Westfall Act) and government liability (under the Federal Tort Claims Act) is refuted, and definitively so, by *United States v. Smith*, 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991). *Smith* held that the Westfall Act immunizes the employee for conduct within the scope of employment *even if* there is no remedy against the United States. *Id.* 499 U.S. at [165–67] 111 S.Ct. at 1185. *Accord,* H.Rep. No. 700, *supra,* p. 6.

*Wood,* 995 F.2d at 1137. The *Wood* majority focused on the allegations, assumed they were true, and then asked whether Congress would have intended immunity for such a defendant. We, like the dissenters in *Wood,* think such an approach puts a premium on skillful pleading and is quite unfair to the employee defendant. *See Wood,* 995 F.2d at 1134. More important, it allows a plaintiff to nullify a government employee's immunity claim. *See id.* In the last analysis, a defendant who was indeed acting within the scope of his office or employment would suffer the very injury Congress wished to protect him from. He would have to go through a complete jury trial on the merits only after which would it be known that he was actually always immune from that which he had endured. On our reading of the statute, the plaintiff, on the other hand, loses his jury trial on the merits only if the scope issue and the merits coincide.[4] If the court determines that the defendant was indeed acting within the scope of his employment, then the plaintiff was *a fortiori* not entitled to a jury, and if the court decides otherwise, the plaintiff is hardly prejudiced; he will have entirely prevailed and presumably would be entitled to a jury trial as to damages.

■ There remains the question—distinct from the obligation of the district court—as to *how much* evidentiary weight the court should afford the Attorney General's certification. The Third Circuit describes the certification as entitled to *"prima facie"* effect, *see Melo v. Hafer,* 13 F.3d at 747, but treats the district court hearing as a summary judgment motion, which obliges the plaintiff to come forward after reasonable discovery with evidence supporting his allegations both as to scope and as to the merits. If there is a material dispute as to the scope issue the district court must resolve it at an evidentiary hearing. We agree with this procedure (which in keeping with the statutory scheme here does not really treat the certification as having any particular evidentiary weight), and note, as did the First Circuit dissenters in *Wood,* that if the district judge decides that issue against the government presumably the employee defendant would be collaterally estopped from asserting it himself. *See Wood,* 995 F.2d at 1136 n. 6.

It still can be asked whether the district judge should remand to the state court if the scope issue is decided against the government. *See Nasuti,* 906 F.2d at 814 (holding that an adverse determination and resubstitution of the employee defendant dictates remand to state court). The government argues that § 2679(d)(2) ("This certification . . . shall conclusively establish scope of office or employment for purposes of removal") constitutes a lasting grant of federal court jurisdiction over the entire case, but that does not seem to follow from the language.[5] In this case, a remand to state court would be presumably only for damages, but in another case, where the scope and merits issues

---

4. Kimbro, nevertheless, argues in effect that it is unconstitutional for her to be so ousted of her right to a jury trial on her state claim through a requirement that the district judge determine the scope issue through an evidentiary hearing. The difficulty with her argument is that under this statute Kimbro's claim is deemed an action against the United States—unless and until she establishes that Velten was acting outside her scope of employment—and the Seventh Amendment does not apply to actions against the United

States. *See Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981); *Wood,* 995 F.2d at 1137 (Coffin, Selya, and Boudin, JJ., dissenting).

5. We do note that § 2679(d)(3), which supports the notion of an evidentiary hearing in federal court on the scope issue when certification is challenged, couples an adverse determination and resubstitution with remand to state court.

are not so identical, for the merits inquiry.[6] Be that as it may, it is not necessary for us to decide this issue at this stage.

\* \* \* \* \* \*

Accordingly, the district court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

**6.** A determination that the employee's conduct was outside the scope of employment might strip the district court of Article III jurisdiction since whatever issues are left are state only. It is unclear to what extent Congress may enlarge the jurisdiction of the federal courts to reach matters involving only disputes under state law. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 469–84, 77 S.Ct. 923, 927–36, 1 L.Ed.2d 972 (1957) (Frankfurter, J., dissenting).