(Slip Opinion)     OCTOBER TERM, 2006     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## OSBORN *v.* HALEY ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 05–593.   Argued October 30, 2006—Decided January 22, 2007

The federal statute commonly known as the Westfall Act accords federal employees absolute immunity from tort claims arising out of acts undertaken in the course of their official duties, 28 U. S. C. §2679(b)(1), and empowers the Attorney General to certify that a federal employee sued for wrongful or negligent conduct "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," §2679(d)(1), (2).  Upon such certification, the United States is substituted as defendant in place of the employee, and the action is thereafter governed by the Federal Tort Claims Act.  If the action commenced in state court, the Westfall Act calls for its removal to a federal district court, and renders the Attorney General's certification "conclusiv[e] . . . for purposes of removal." §2679(d)(2).

Plaintiff-petitioner Pat Osborn sued federal employee Barry Haley in state court.  Osborn alleged that Haley tortiously interfered with her employment with a private contractor, that he conspired to cause her wrongful discharge, and that his efforts to bring about her discharge were outside the scope of his employment.  The United States Attorney, serving as the Attorney General's delegate, certified that Haley was acting within the scope of his employment at the time of the conduct alleged in Osborn's complaint.  She thereupon removed the case to a federal district court, where she asserted that the alleged wrongdoing never occurred.  The District Court, relying in Osborn's allegations, entered an order that rejected the Westfall Act certification, denied the Government's motion to substitute the United States as defendant in Haley's place, and remanded the case to the state court.  The Sixth Circuit vacated the District Court's order, holding that a Westfall Act certification is not improper simply

because the United States denies the occurrence of the incident on which the plaintiff centrally relies. Based on §2679(d)(2)'s direction that certification is "conclusiv[e] . . . for purposes of removal," the Court of Appeals instructed the District Court to retain jurisdiction over the case.

*Held:*

1. The Attorney General's certification is conclusive for purposes of removal, *i.e.*, once certification and removal are effected, exclusive competence to adjudicate the case resides in the federal court, and that court may not remand the suit to the state court. Pp. 9–17.

(a) The Sixth Circuit had jurisdiction to review the order rejecting the Attorney General's certification and denying substitution of the United States as defendant. Under the collateral order doctrine of *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, the District Court's ruling, which effectively denied Haley Westfall Act protection, qualifies as a reviewable final decision under 28 U. S. C. §1291. Meeting *Cohen*'s three criteria, the District Court's denial of certification and substitution conclusively decided a contested issue, the issue decided is important and separate from the merits of the action, and the District Court's disposition would be effectively unreviewable later in the litigation. 337 U. S., at 546. Pp. 9–11.

(b) The Sixth Circuit also had jurisdiction to review the District Court's remand order. Pp. 11–17.

(1) The Sixth Circuit had jurisdiction to review the District Court's remand order, notwithstanding 28 U. S. C. §1447(d), which states that "[a]n order remanding a case to the State court . . . is not reviewable on appeal or otherwise . . . ." This Court held, in *Thermtron Products, Inc.* v. *Hermansdorfer*, 423 U. S. 336, that §1447(c) confines §1447(d)'s scope. Section §1447(c) provides that a case must be remanded "if . . . it appears that the district court lacks subject matter jurisdiction." Under *Thermtron*, "only remand orders issued under §1447(c) and invoking the [mandatory ground] specified therein . . . are immune from review" under §1447(d). *Id*., at 346. To determine whether *Thermtron*'s reasoning controls here, the Westfall Act's design, particularly its prescriptions regarding the removal and remand of actions filed in state court, must be examined.

When the Attorney General certifies that a federal employee named defendant in a state-court tort action was acting within the scope of his or her employment at the time in question, the action "shall be removed" to federal court and the United States must be substituted as the defendant. §2679(d)(2). Of prime importance here, §2679(d)(2) concludes with the command that the "certification of the Attorney General shall *conclusively establish scope of office or employment for purposes of removal*." (Emphasis added.) This direc-

tive markedly differs from Congress' instruction for cases in which the Attorney General "refuse[s] to certify scope of office or employment." §2679(d)(3). In that event, the defendant-employee may petition the court in which the action is instituted to make the scope-of-employment certification. If the employee so petitions in an action filed in state court, the Attorney General may, at his discretion, remove the action to federal court. If removal has occurred, and thereafter "the district court determines that the employee was not acting within the scope of his office or employment, the action . . . *shall be remanded to the State court." Ibid.* (emphasis added).

The Act's distinction between removed cases in which the Attorney General issues a scope-of-employment certification and those in which he does not leads to the conclusion that Congress gave district courts no authority to return cases to state courts on the ground that the Attorney General's certification was unwarranted. Section 2679(d)(2) does not preclude a district court from resubstituting the federal official as defendant for purposes of trial if the court determines, postremoval, that the Attorney General's scope-of-employment certification was incorrect. For purposes of establishing a forum for adjudication, however, §2679(d)(2) renders the Attorney General's certification dispositive. Were it open to a district court to remand a removed action on the ground that the Attorney General's certification was erroneous, §2679(d)(2)'s final instruction would be weightless. Congress adopted the "conclusiv[e] . . . for the purposes of removal" language to "foreclose needless shuttling of a case from one court to another," *Gutierrez de Martinez* v. *Lamagno*, 515 U. S. 417, 433, n. 10. The provision assures that "once a state tort action has been removed to a federal court after a certification by the Attorney General, it may never be remanded to the state system." *Id.*, at 440 (SOUTER, J., dissenting).

*Thermtron* held that §1447(d) must be read together with §1447(c). There is stronger cause to hold that §1447(c) and (d) must be read together with the later enacted §2679(d)(2). Both §1447(d) and §2679(d)(2) are antishuttling provisions that aim to prevent "prolonged litigation of questions of jurisdiction of the district court to which the cause is removed." *United States* v. *Rice*, 327 U. S. 742, 751. Once the Attorney General certifies scope of employment, triggering removal of the case to a federal forum, §2679(d)(2) renders the federal court exclusively competent and categorically precludes a remand to the state court. By declaring certification conclusive as to the federal forum's jurisdiction, Congress has barred a district court from passing the case back to state court based on the court's disagreement with the Attorney General's scope-of-employment determination. Of the two antishuttling commands, §1447(d) and

§2679(d)(2), only one can prevail and the Court holds that the latter controls. Tailor-made for Westfall Act cases, §2679(d)(2) "conclusively" determines that the action shall be adjudicated in the federal forum, and may not be returned to the state system. Pp. 11–16.

(2) The Westfall Act's command that a district court retain jurisdiction over a case removed pursuant to §2679(d)(2) does not run afoul of Article III. An Article III question could arise in this case only if, after full consideration, the District Court determined that Haley engaged in tortious conduct outside the scope of his employment. Because, at that point, little would be left to adjudicate as to his liability, and because a significant federal question (whether he has Westfall Act immunity) would have been raised at the outset, the case would "aris[e] under" federal law as that term is used in Article III. Even if only state-law claims remained after resolution of the federal question, the District Court would have authority, consistent with Article III, to retain jurisdiction. Pp. 16–17.

2. Westfall Act certification is proper when a federal officer charged with misconduct asserts, and the Attorney General concludes, that the incident or episode in suit never occurred. Pp. 17–24.

(a) Because the Westfall Act's purpose is to shield covered employees not only from liability but from suit, it is appropriate to afford protection to an employee on duty at the time and place of an "incident" alleged in a complaint who denies that the incident occurred. Just as the Government's certification that an employee "was acting within the scope of his employment" is subject to threshold judicial review, *Lamagno*, 515 U. S., at 434, so a complaint's charge of conduct outside the scope of employment, when contested, warrants immediate judicial investigation. Otherwise, a federal employee would be stripped of suit immunity not by what the court finds, but by what the complaint alleges. This position is supported by *Willingham* v. *Morgan*, 395 U. S. 402, which concerned 28 U. S. C. §1442, the federal officer removal statute. Section 1442 allows a federal officer to remove a civil action from state court if the officer is "sued in an official or individual capacity for any act under color of such office." The Court held in *Willingham* that the language of §1442 is "broad enough to cover all cases where federal officers can raise a colorable defense arising out of the duty to enforce federal law." 395 U. S., at 406–407. There is no reason to conclude that the Attorney General's ability to remove a suit to federal court under §2679(d)(2), unlike a federal officer's ability to remove under §1442, should be controlled by the plaintiff's allegations. Pp. 19–21.

(b) Tugging against this reading is a "who decides" concern. If the Westfall Act certification must be respected unless and until the District Court determines that Haley, in fact, engaged in conduct be-

yond the scope of his employment, then Osborn may be denied a jury trial. Upon the Attorney General's certification, however, the action is "deemed to be . . . brought against the United States," §2679(d)(2), and the Seventh Amendment, which preserves the right to a jury trial in common-law suits, does not apply to proceedings against the sovereign. Thus, at the time the district court reviews the Attorney General's certification, the plaintiff has no right to a jury trial. The Westfall Act's core purpose—to relieve covered employees from the cost and effort of defending the lawsuit and to place those burdens on the Government—also bears on the appropriate trier of any facts essential to certification. Immunity-related issues should be decided at the earliest opportunity. See, *e.g., Hunter* v. *Bryant*, 502 U. S. 224, 228 *(per curiam)*. Pp. 22–24.

422 F. 3d 359, affirmed.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, and ALITO, JJ., joined, in which SOUTER, J., joined except for Parts II–B and II–C, and in which BREYER, J., joined as to Parts I and II. SOUTER, J., and BREYER, J., filed opinions concurring in part and dissenting in part. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 05–593

———————

## PAT OSBORN, PETITIONER *v.* BARRY HALEY ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[January 22, 2007]

JUSTICE GINSBURG delivered the opinion of the Court.

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties. See 28 U. S. C. §2679(b)(1). When a federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." §2679(d)(1), (2). Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee. The litigation is thereafter governed by the Federal Tort Claims Act (FTCA), 60 Stat. 842. If the action commenced in state court, the case is to be removed to a federal district court, and the certification remains "conclusiv[e] . . . for purposes of removal." §2679(d)(2).

In *Gutierrez de Martinez* v. *Lamagno*, 515 U. S. 417, 420 (1995), we held that the Attorney General's Westfall Act scope-of-employment certification is subject to judicial

review.  Today, we address three further questions regarding the Westfall Act's operation: (1) Is Attorney General certification proper when a federal officer denies the occurrence of the tortious conduct alleged by the plaintiff; (2) does §2679(d)(2), by rendering the Attorney General's certification "conclusiv[e] . . . for purposes of removal," bar remand even if the federal court determines that the United States should not be substituted as defendant in place of the federal employee; and (3) does 28 U. S. C. §1447(d)'s bar on appellate review of remand orders override §2679(d)(2)'s direction that, for purposes of removal, the Attorney General's certification is conclusive.  The first two questions were advanced in the petition for certiorari; in our order granting review, we asked the parties to address the impact of §1447(d) on this case.

Pat Osborn, plaintiff-petitioner in the civil action now before the Court, sued federal employee Barry Haley in a Kentucky state court.  She alleged that Haley tortiously interfered with her employment with a private contractor and conspired to cause her wrongful discharge.  Osborn further alleged that Haley's efforts to bring about her discharge were outside the scope of his employment.  The United States Attorney, serving as the Attorney General's delegate, countered Osborn's allegations by certifying that Haley "was acting within the scope of his employment . . . at the time of the conduct alleged in [Osborn's] complaint." App. to Brief in Opposition 23 (hereinafter Luber App.). Based on this certification, the case was removed to the United States District Court for the Western District of Kentucky, as §2679(d)(2) instructs.

In the federal forum, the United States Attorney denied the tortious conduct Osborn attributed to Haley, asserting that the wrongdoing she alleged never occurred.  Accepting Osborn's allegations as true, the District Court entered an order that rejected the Attorney General's Westfall Act certification, denied the Government's motion to substi-

tute the United States as defendant in place of Haley, and remanded the case to the state court. On appeal, the Sixth Circuit vacated the District Court's order, and instructed that court to retain jurisdiction over the case.

We affirm the Court of Appeals' judgment. On the merits, we agree with the Sixth Circuit that the District Court, in denying substitution of the United States as defendant in lieu of Haley, misconstrued the Westfall Act. Substitution of the United States is not improper simply because the Attorney General's certification rests on an understanding of the facts that differs from the plaintiff's allegations. The United States, we hold, must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment. On the jurisdictional issues, we hold that the Attorney General's certification is conclusive for purposes of removal, *i.e.*, once certification and removal are effected, exclusive competence to adjudicate the case resides in the federal court, and that court may not remand the suit to the state court. We also hold that §1447(d)'s bar on appellate review of remand orders does not displace §2679(d)(2), which shields from remand an action removed pursuant to the Attorney General's certification.

I

Petitioner Pat Osborn worked for Land Between the Lakes Association (LBLA), a private company that contracted with the United States Forest Service to provide staff for the Land Between the Lakes National Recreation Area in Kentucky.[1] While employed by LBLA, Osborn applied for a trainee position with the Forest Service.

————————

[1] We draw this account of the facts from the District Court's opinion and order denying reconsideration, supplemented by the allegations in Osborn's complaint.

Respondent Barry Haley, a Forest Service officer, was responsible for the Service's hiring process. At a meeting with LBLA employees, Haley announced that he had hired someone else for the job Osborn sought. Osborn asked why Haley did not inform her before the meeting, and she made a joke at Haley's expense. After the meeting, Osborn's supervisor told her to apologize to Haley; she refused.

A few weeks later, Osborn filed a complaint with the United States Department of Labor, asking the Department to investigate whether the Forest Service, in its hiring decision, had given appropriate consideration to the veterans' preference points to which she was entitled. The Department's investigator, Robert Kuenzli, after interviewing Haley, concluded that the hiring procedure had been handled correctly. Kuenzli so informed Osborn, who then asked him to close her complaint. On the same day LBLA's executive director, respondent Gaye Luber, summoned Osborn and demanded that she apologize to Haley for "not being a good Forest Service partner." Complaint ¶18, Luber App. 4. Osborn again refused. Two days later, she was fired.

Osborn filed suit against Haley, Luber, and LBLA in a Kentucky state court. She alleged that Haley tortiously interfered with her employment relationship with LBLA and conspired to cause her wrongful discharge. Specifically, she charged that Haley maliciously induced Luber to fire her, and that Haley did so in retaliation for Osborn's Department of Labor complaint requesting a veterans' preference inquiry. Complaint ¶29, Luber App. 7. In response the local United States Attorney, invoking the Westfall Act, certified on behalf of the Attorney General that Haley "was acting within the scope of his employment with the U. S. Forest Service at the time of the conduct alleged in [Osborn's] complaint." Luber App. 23. As is customary, the certification stated no reasons for the

determination.[2]

In the Westfall Act, Congress instructed:

> "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. *This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.*" 28 U. S. C. §2679(d)(2) (emphasis added).

Citing this provision, as well as the federal officer removal statute, §1442,[3] the United States removed the case to the

———————

[2] The certification read:

"I, Monica Wheatley, Acting United States Attorney, Western District of Kentucky, acting pursuant to the provisions of 28 U. S. C. §2679(d)(2), and by virtue of the authority vested in me by the Appendix to 28 C.F.R. §15.3 (1990), hereby certify that the Office of the United States Attorney has reviewed the available facts in this matter. On the basis of the information now available to me with respect to the allegations in the complaint, I find that the named federal defendant, Barry Haley, was acting within the scope of his employment with the U. S. Forest Service, at the time of the conduct alleged in the complaint." Luber App. 23.

[3] The federal officer removal statute provides that "[a] civil action or criminal prosecution commenced in a State court against" "any officer . . . of the United States . . . sued in an official or individual capacity for any act under color of such office" "may be removed . . . to the district court of the United States for the district and division embracing the

United States District Court for the Western District of
Kentucky.  The United States Attorney notified the Dis-
trict Court that the United States should be substituted
for Haley as defendant, and filed a motion to dismiss on
the ground that Osborn had not  exhausted administrative
remedies, as required by the FTCA.

Osborn opposed the substitution and the motion to
dismiss.  She argued that Haley's conduct was outside the
scope of his employment, hence the Westfall Act afforded
him no immunity.  As support for her opposition, Osborn
submitted a memorandum of understanding between the
LBLA and the Forest Service, which cautioned Forest
Service employees against involvement in LBLA employ-
ment decisions.

Apparently under the impression that the United
States, at that preliminary stage, did not dispute Osborn's
factual allegations, the District Court declined to conduct
an evidentiary hearing.  Under Kentucky law, the court
observed, if Osborn's allegations were true, Haley had
acted outside the scope of his employment.  In the District
Court's view the closeness in time of Osborn's request for a
Department of Labor investigation, Kuenzli's call to Ha-
ley, and Luber's demand for an apology justified an infer-
ence that Haley interfered with Osborn's employment in
violation of the LBLA-Forest Service memorandum of
understanding.  So reasoning, the District Court overruled
the Westfall Act certification and denied substitution.
Under this ruling, the United States was no longer before
the court.  Furthermore, the parties were not of diverse
citizenship and no federal law was at issue.  The District
Court therefore held that it lacked subject-matter jurisdic-
tion over the case.[4]   Invoking §1447(c),[5] the court con-

———————
place wherein it is pending."  §1442(a), (a)(1), (b).

[4]The District Court did not address the propriety of removal under
§1442.  See *infra*, at 20, n. 11.

cluded that the case must be remanded to the state court.

The United States moved for reconsideration, urging that, contrary to the District Court's impression, the Government did contest Osborn's factual allegations. Recalling that it had denied Osborn's allegations in its answer to her complaint, the United States submitted sworn declarations from Haley and Luber. Haley's stated that he was not in communication with Luber between the time of Kuenzli's investigation and Osborn's firing. Luber's declaration stated that Osborn's request for an investigation regarding her veterans' preference points could not have had any bearing on Osborn's termination, for Luber was unaware of the request at the relevant time. Absent contrary evidence, the Government maintained, these declarations sufficed to support the certification and the continuance of the United States as defendant in place of Haley. In the alternative, the Government sought discovery.[6]

---------

[5] Section 1447(c) provides:

"A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case."

[6] The District Court refused to entertain the alternative argument that, if a relevant Haley-Luber conversation did occur, Haley was acting within the scope of his employment. Because Haley had declared, under oath, that he did not communicate with Luber, the court was unwilling to allow discovery on the question whether, if Haley did contact Luber, he was acting within the scope of his employment. But cf. Fed. Rule Civ. Proc. 8(e)(2) (subject to Rule 11 obligations, parties may plead claims or defense "alternately or hypothetically"). We express no opinion on the propriety of the District Court's refusal to consider the Government's alternative pleading.

The District Court denied the Government's reconsideration motion. The Haley and Luber declarations, the court said, clarified that the controversy centered on whether there had been any communication between Haley and Luber influencing Luber's decision to fire Osborn. The Westfall Act would have shielded Haley, the Court suggested, had the United States admitted a Haley-Luber communication but defended its content as within the scope of Haley's employment. Westfall Act certification was improper, the court concluded, because the United States did not admit, but instead denied, the occurrence of the event central to proof of Osborn's claim. The District Court acknowledged disagreement among the Circuits on the availability of a Westfall Act certification when the United States "den[ies] the occurrence of the basic incident charged." *Wood* v. *United States*, 995 F. 2d 1122, 1124 (CA1 1993) (en banc). Compare *ibid.* and *McHugh* v. *University of Vermont*, 966 F. 2d 67, 74–75 (CA2 1992) (prohibiting incident-denying certifications), with *Heuton* v. *Anderson*, 75 F. 3d 357, 360 (CA8 1996); *Kimbro* v. *Velten*, 30 F. 3d 1501, 1508 (CADC 1994); and *Melo* v. *Hafer*, 13 F. 3d 736, 746–747 (CA3 1994) (allowing incident-denying certifications). Choosing to follow the First Circuit's opinion in *Wood*, the District Court adhered to its prior ruling that the Westfall Act certification in this case was invalid.

On appeal, the Sixth Circuit vacated the District Court's order denying certification and substitution. 422 F. 3d 359, 365 (2005). The Court of Appeals, in accord with *Heuton*, *Kimbro*, and *Melo*, held that a Westfall Act certification is not improper simply because the United States denies the occurrence of the incident on which the plaintiff centrally relies. 422 F. 3d, at 364. Rather, the court held, where "the Attorney General's certification is based on a different understanding of the facts than is reflected in the complaint, including a denial of the harm-causing inci-

dent, the district court must resolve the factual dispute." *Ibid.* (quoting *Melo*, 13 F. 3d, at 747).

The Sixth Circuit also vacated the District Court's order remanding the case to the state court. Section 2679(d)(2), the Court of Appeals stressed, instructs that the "certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal." The court read that instruction to proscribe shuttling cases back to state courts and, instead, to require district court adjudication of the controversy even when a Westfall Act certification is rejected and, correspondingly, substitution of the United States as defendant is denied. 422 F. 3d, at 365. On that issue too, the Court of Appeals noted a division among the Circuits. Compare *Borneman* v. *United States*, 213 F. 3d 819, 826 (CA4 2000); *Garcia* v. *United States*, 88 F. 3d 318, 325–327 (CA5 1996); and *Aliota* v. *Graham*, 984 F. 2d 1350, 1356 (CA3 1993) (holding that a district court lacks authority to remand a case removed under §2679(d)(2)), with *Haddon* v. *United States*, 68 F. 3d 1420, 1427 (CADC 1995); and *Nasuti* v. *Scannell*, 906 F. 2d 802, 814, n. 17 (CA1 1990) (holding remand proper when district court rejects the Attorney General's certification). We granted certiorari. 547 U. S. __ (2006).

## II

We consider first the Court of Appeals' jurisdiction to review the District Court's disposition of this case. We address in turn the questions whether the appellate court had jurisdiction to review (1) the order rejecting the Attorney General's certification and denying substitution of the United States as defendant, and (2) the order remanding the case to the state court.

### A

The District Court's rejection of certification and substitution effectively denied Haley the protection afforded by

the Westfall Act, a measure designed to immunize covered federal employees not simply from liability, but from suit. See §2(a)(5), 102 Stat. 4563; *Lamagno*, 515 U. S., at 425–426; H. R. Rep. No. 100–700, p. 4 (1988). Under the collateral order doctrine of *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541 (1949), this ruling qualifies as a reviewable final decision within the compass of 28 U. S. C. §1291.[7]

Meeting the three criteria of *Cohen*, the District Court's denial of certification and substitution conclusively decided a contested issue, the issue decided is important and separate from the merits of the action, and the District Court's disposition would be effectively unreviewable later in the litigation. 337 U. S., at 546. See *Mitchell* v. *Forsyth*, 472 U. S. 511, 525–527 (1985) (holding that district court rejection of a defendant's qualified immunity plea is immediately appealable under the *Cohen* doctrine because suit immunity "is effectively lost if a case is erroneously permitted to go to trial" against the immune official). As cogently explained by the Fifth Circuit in *Mitchell* v. *Carlson*, 896 F. 2d 128, 133 (1990), retaining the federal employee as a party defendant

> "effectively denie[s] [him] immunity from suit if [he] was entitled to such immunity under the Westfall Act. Under the Act, once the United States Attorney certifies that the federal employee acted within the scope of [his] employment, the plaintiff properly can proceed only against the United States as defendant. The federal employee remains immune from suit. By [rejecting the Attorney Genera's certification], the district court subject[s] [the employee] to the burden of defending a suit . . ., a burden from which [the Westfall Act spares him]."

---

[7] Section 1291 provides that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts."

Tellingly, the Courts of Appeals are unanimous in holding that orders denying Westfall Act certification and substitution are amenable to immediate review under *Cohen*. See *Woodruff* v. *Covington*, 389 F. 3d 1117, 1124 (CA10 2004); *Mathis* v. *Henderson*, 243 F. 3d 446, 448 (CA8 2001); *Borneman,* 213 F. 3d, at 826 (CA4); *Lyons* v. *Brown*, 158 F. 3d 605, 607 (CA1 1998); *Taboas* v. *Mlynczak*, 149 F. 3d 576, 579 (CA7 1998); *Coleman* v. *United States*, 91 F. 3d 820, 823 (CA6 1996); *Flohr* v. *Mackovjak*, 84 F. 3d 386, 390 (CA11 1996); *Kimbro,* 30 F. 3d, at 1503 (CADC); *Aliota,* 984 F. 2d, at 1354 (CA3); *Pelletier* v. *Federal Home Loan Bank*, 968 F. 2d 865, 873 (CA9 1992); *McHugh,* 966 F. 2d, at 69 (CA2); *Carlson,* 896 F. 2d, at 133 (CA5). We confirm that the Courts of Appeals have ruled correctly on this matter.

B

In our order granting certiorari we asked the parties to address, in addition to the issues presented in the petition, this further question: Did the Court of Appeals have jurisdiction to review the District Court's remand order, notwithstanding 28 U. S. C. §1447(d)'s declaration that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise"? In answering this question, we also resolve the second question presented in the petition for certiorari—whether the Westfall Act's rule against remanding actions removed pursuant to §2679(d)(2) applies when the federal court determines that the United States should not be substituted as defendant in place of the federal employee. Our disposition is informed by, and tracks, the Third Circuit's reasoning in *Aliota*, 984 F. 2d, at 1354–1357.

We begin with the provision we asked the parties to address: §1447(d). That provision states in relevant part: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise

. . . ." In *Thermtron Products, Inc.* v. *Hermansdorfer*, 423 U. S. 336 (1976), we held that the preceding subsection, §1447(c), confined §1447(d)'s scope. Under §1447(d), the Court explained, "only remand orders issued under §1447(c) and invoking the [mandatory] grounds specified therein—that removal was improvident and without jurisdiction—are immune from review." *Id*., at 346.[8] *Thermtron* had been properly removed to the federal court. The sole reason the District Court gave for remanding it was that court's crowded docket. This Court held the remand order reviewable, observing that §1447(c) could not sensibly be read to confer on the district courts "carte blanche authority . . . to revise the federal statutes governing removal." *Id*., at 351. See also *Quackenbush* v. *Allstate Ins. Co.*, 517 U. S. 706 (1996) (holding abstention-based remand order immediately appealable). But see *Gravitt* v. *Southwestern Bell Telephone Co.*, 430 U. S. 723 (1977) *(per curiam)* (holding unreviewable a remand order purporting to rest on a ground within the scope of §1447(c)).

The United States urges us to apply *Thermtron* and hold the remand order in this case reviewable because that order was not based on a ground specified in §1447(c). To determine whether *Thermtron* controls, we must start with an examination of the Westfall Act's design, particularly its prescriptions regarding the removal and remand of actions filed in state court.

As earlier noted, see *supra*, at 1, the Act grants the Attorney General authority to certify that a federal employee named defendant in a tort action was acting within the scope of his or her employment at the time in question.

---

[8] At the time *Thermtron* was decided, §1447(c) required a district court to remand a case if it appeared that the case had been "removed improvidently and without jurisdiction." 28 U. S. C. §1447(c) (1970 ed.). Section 1447(c) now provides that a case must be remanded if "it appears that the district court lacks subject matter jurisdiction."

§2679(d)(1), (2). If the action is commenced in a federal court, and the Attorney General certifies that the employee "was acting within the scope of his office or employment at the [relevant] time," the United States must be substituted as the defendant. §2679(d)(1). If the action is launched in a state court, and the Attorney General makes the same certification, the action "shall be removed" to the appropriate federal district court, and again the United States must be substituted as the defendant. §2679(d)(2). Of prime importance to our decision, §2679(d)(2) concludes with the command: "Th[e] certification of the Attorney General shall *conclusively establish scope of office or employment for purposes of removal*." (Emphasis added.)

This directive markedly differs from Congress' instruction for cases in which the Attorney General "refuse[s] to certify scope of office or employment." §2679(d)(3). In that event, the defendant employee may petition the court in which the action was instituted to make the scope-of-employment certification. If the complaint was filed in a state court, the Attorney General *may* remove the case to the appropriate federal court, but he is not obliged to do so. *Ibid.* If the court, state or federal, issues the certification, "the United States shall be substituted as the party defendant." *Ibid.* If removal has occurred, and thereafter "the district court determines that the employee was not acting within the scope of his office or employment, the action . . . *shall be remanded to the State court*." *Ibid.* (emphasis added).

The Act's distinction between removed cases in which the Attorney General issues a scope-of-employment certification, and those in which he does not, leads us to conclude that Congress gave district courts no authority to return cases to state courts on the ground that the Attorney General's certification was unwarranted. Absent certification, §2679(d)(3) directs that the case must be

remanded to the state court in which the action commenced. In contrast, when the Attorney General certifies scope of employment, his certificate "conclusively establish[es] scope of office or employment *for purposes of removal.*" §2679(d)(2) (emphasis added). Section 2679(d)(2) does not preclude a district court from resubstituting the federal official as defendant *for purposes of trial* if the court determines, postremoval, that the Attorney General's scope-of-employment certification was incorrect. For purposes of establishing a forum to adjudicate the case, however, §2679(d)(2) renders the Attorney General's certification dispositive.[9]

Were it open to a district court to remand a removed action on the ground that the Attorney General's certification was erroneous, the final instruction in §2679(d)(2) would be weightless. The Attorney General's certification would not "conclusively establish scope of office or employment" for either trial or removal. Instead, the Attorney General's scope certification would supply only a tentative basis for removal, rather than a conclusive one. In *Lamagno*, the Court unanimously agreed that Congress spoke unambiguously on this matter: Congress adopted the "conclusiv[e] . . . for purposes of removal" language to "foreclose needless shuttling of a case from one court to another." 515 U. S., at 433, n. 10; see *id.*, at 440 (SOUTER, J., dissenting) ("[T]here is nothing equivocal about [§2679(d)(2)'s] provision that once a state tort action has been removed to a federal court after a certification by the

_____

[9] As explained by the Third Circuit in *Melo* v. *Hafer*, 912 F. 2d 628, 641 (1990), "[t]here are significant policy reasons why Congress would choose to give the government an unchallengeable right to have a federal forum for tort suits brought against its employees." But Congress' endeavor to secure that right does not mean that Congress also intended to render unreviewable substitution of the United States as defendant in place of the employee. See *ibid.; cf. Gutierrez de Martinez* v. *Lamagno*, 515 U. S. 417, 430–434 (1995).

Attorney General, it may never be remanded to the state system.").

With the Westfall Act's provisions on removal of actions filed in state court in clear view, we return to the question whether an order remanding a case removed pursuant to §2679(d)(2) is reviewable. *Thermtron* held that §1447(d) must be read together with §1447(c). There is stronger cause, we conclude, to hold that §1447(c) and (d) must be read together with the later enacted §2679(d)(2). Both §1447(d) and §2679(d)(2) are antishuttling provisions. Each aims to prevent "prolonged litigation of questions of jurisdiction of the district court to which the cause is removed." *United States* v. *Rice*, 327 U. S. 742, 751 (1946). Section 2679(d)(2) is operative when the Attorney General certifies scope of employment, triggering removal of the case to a federal forum. At that point, §2679(d)(2) renders the federal court exclusively competent and categorically precludes a remand to the state court.

The command that the Attorney General's certification "shall conclusively establish scope of office or employment for purposes of removal," §2679(d)(2), differentiates certified Westfall Act cases from the typical case remanded for want of subject-matter jurisdiction. Ordinarily, when the plaintiff moves to remand a removed case for lack of subject-matter jurisdiction, the federal district court undertakes a threshold inquiry; typically the court determines whether complete diversity exists or whether the complaint raises a federal question. In Attorney General certified Westfall Act cases, however, no threshold determination is called for; the Attorney General's certificate forecloses any jurisdictional inquiry. By declaring the Attorney General's certification "conclusive" as to the federal forum's jurisdiction, Congress has barred a district court from passing the case back to the state court where it originated based on the court's disagreement with the Attorney General's scope-of-employment determination.

Our decision that §2679(d)(2) leaves the district court without authority to send a certified case back to the state court scarcely means that whenever the district court misconstrues a jurisdictional statute, appellate review of the remand is in order. Such an exception would, of course, collide head on with §1447(d), and with our precedent. See, *e.g., Things Remembered, Inc.* v. *Petrarca*, 516 U. S. 124, 127–128 (1995). Only in the extraordinary case in which Congress has ordered the intercourt shuttle to travel just one way—from state to federal court—does today's decision hold sway.

In short, of the two antishuttling commands, §1447(d) and §2679(d)(2), only one can prevail. We hold that §2679(d)(2) controls. Tailor-made for Westfall Act cases, §2679(d)(2) is a forum-selecting rule Congress made "conclusive," beyond the ken of district courts to revise. See *Thermtron*, 423 U. S., at 351.

## C

In *Lamagno*, the Court considered, but did not definitively resolve, the question whether Article III permits "[t]reating the Attorney General's certification as conclusive for purposes of removal but not for purposes of substitution." 515 U. S., at 434. It was argued in that case that if certification is rejected and substitution denied "because the federal court concludes that the employee acted outside the scope of his employment, and if the tort plaintiff and the [defendant-employee] are not of diverse citizenship, . . . then the federal court will be left with a case without a federal question to support the court's subject-matter jurisdiction." *Id.*, at 434–435. *Lamagno* was an action commenced in federal court on the basis of diversity of citizenship, so there was in that case "not even the specter of an Article III problem." *Id.*, at 435.

In the case before us, the question would arise only if, after full consideration, the District Court determines that

Haley in fact engaged in the tortious conduct outside the scope of his employment charged in Osborn's complaint. At that point, however, little would be left to adjudicate, at least as to Haley's liability. Because a significant federal question (whether Haley has Westfall Act immunity) would have been raised at the outset, the case would "aris[e] under" federal law, as that term is used in Article III. See *Verlinden B. V.* v. *Central Bank of Nigeria*, 461 U. S. 480, 493 (1983). Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction. See *Carnegie-Mellon Univ.* v. *Cohill*, 484 U. S. 343, 350–351 (1988) (when federal character of removed case is eliminated while the case is *sub judice*, court has discretion to retain jurisdiction, to remand, or to dismiss); cf. *Mine Workers* v. *Gibbs*, 383 U. S. 715, 725 (1966) (pendent jurisdiction may be exercised when federal and state claims have a "common nucleus of operative fact" and would "ordinarily be expected to [be tried] all in one judicial proceeding"). See also 28 U. S. C. §1367 ("Supplemental jurisdiction"). "[C]onsiderations of judicial economy, convenience and fairness to litigants," *Gibbs*, 383 U. S., at 726, make it reasonable and proper for a federal court to proceed to final judgment, once it has invested time and resources to resolve the pivotal scope-of-employment contest. Thus, under the precedent that guides us, the Westfall Act's command that a district court retain jurisdiction over a case removed pursuant to §2679(d)(2) does not run afoul of Article III.

## III

With the jurisdictional issues resolved, we reach the principal question raised by petitioner Osborn: whether the United States Attorney validly certified that Haley "was acting within the scope of his employment . . . at the

time of the conduct alleged in the complaint." Luber App.
23. We note first that the certificate is formally in order;
it closely tracks the language of the Westfall Act. See
§2679(d)(2) (authorizing certification "that the defendant
employee was acting within the scope of his office or em-
ployment at the time of the incident out of which the claim
arose"). In *Lamagno*, we held that the Attorney General's
certification is "the first, but not the final word" on
whether the federal officer is immune from suit and, cor-
relatively, whether the United States is properly substi-
tuted as defendant. 515 U. S., at 432. A plaintiff may
request judicial review of the Attorney General's scope-of-
employment determination, as Osborn did here.

As earlier recounted, see *supra*, at 6, the District Court
initially accepted Osborn's allegations as true because it
believed that the United States did not dispute them.
Applying Kentucky law, that court determined that "Ha-
ley's alleged actions occurred outside the scope of his
employment." App. to Pet. for Cert. 24a. In a motion for
reconsideration, the Government clarified that, far from
admitting Osborn's allegations, it disputed the very occur-
rence of the harm-causing conduct Osborn alleged. In
support of the motion, the Government submitted affida-
vits from Haley and Luber denying that they engaged in
the conduct ascribed to them in Osborn's complaint. The
Government contended that Haley remained within the
proper bounds of his employment at the relevant time
and place because the wrongdoing Osborn alleged never
happened.

The Government's reconsideration motion asked the
District Court to resolve the factual dispute, *i.e.*, to deter-
mine whether, as the complaint alleged, Haley prevailed
upon Luber to discharge Osborn, or whether, as Haley
asserted, he never communicated with Luber about
Osborn's LBLA employment. The court did not grant the
Government's request for resolution of the factual dispute.

Instead, it held the Westfall Act certification invalid precisely because the Government denied that Haley engaged in harm-causing conduct.

Two Courts of Appeals have held that Westfall Act certification is improper when the Government denies the occurrence of the alleged injury-causing action or episode. See *Wood,* 995 F. 2d, at 1123 (CA1); *McHugh,* 966 F. 2d, at 74–75 (CA2). The Sixth Circuit, in this case, and several other Courts of Appeals have held that a plaintiff's allegation of conduct beyond the scope of a federal official's employment does not block certification where the Government contends that the alleged tortious conduct did not occur. See *Heuton,* 75 F. 3d, at 360 (CA8); *Kimbro,* 30 F. 3d, at 1508 (CADC); *Melo,* 13 F. 3d, at 746–747 (CA3). We agree that Westfall Act certification is proper when a federal officer charged with misconduct asserts, and the Government determines, that the incident or episode in suit never occurred.

## A

The Westfall Act grants a federal employee suit immunity, we reiterate, when "acting within the scope of his office or employment at the time of the incident out of which the claim arose." §2679(d)(1), (2). That formulation, we are persuaded, encompasses an employee on duty at the time and place of an "incident" alleged in a complaint who denies that the incident occurred. See *Wood,* 995 F. 2d, at 1134 (joint opinion of Coffin, Selya, and Boudin, JJ., dissenting) ("[S]urely the statute applies with the same force whether a postal service driver says that he did not hit the plaintiff's car or that he did so but was not at fault."); *Melo,* 13 F. 3d, at 747. And just as the Government's certification that an employee "was acting within the scope of his employment" is subject to threshold judicial review, *Lamagno,* 515 U. S., at 434, so a complaint's charge of conduct outside the scope of employ-

ment, when contested, warrants immediate judicial investigation. Were it otherwise, a federal employee would be stripped of suit immunity not by what the court finds, but by what the complaint alleges.[10]

In sum, given the purpose of the Westfall Act to shield covered employees not only from liability but from suit, it is altogether appropriate to afford protection to a "negligent . . . employee . . . as a matter of course." *Wood*, 995 F. 2d, at 1135 (joint opinion of Coffin, Selya, and Boudin, JJ., dissenting). But it would make scant sense to read the Act as leaving an employee charged with an intentional tort[11] to fend for himself when he denies wrongdoing and asserts he "engaged only in proper behavior occurring wholly within the scope of his office or employment." *Ibid.* See also *Hueton*, 75 F. 3d, at 360 ("[I]t is illogical to assume that Congress intended to protect guilty employees but desert innocent ones.").[12]

----

[10] In an opinion resembling his majority opinion in *Wood* v. *United States*, 995 F. 2d 1122 (CA1 1993) (en banc), JUSTICE BREYER takes the view that the Attorney General may issue a Westfall Act certification if he contests the plaintiff's account of the episode-in-suit, but he must "assume some kind of incident" in order to certify. *Post*, at 2. Thus he would not permit "purely incident-denying certifications," and he places the certification here in that category. *Ibid.* We agree with the *Wood* dissenters' appraisal of JUSTICE BREYER's distinction between incident-denying and incident-recharacterizing certifications: That approach would require district courts "to engage in difficult, time-wasting controversies . . . about precisely *which facts* pertaining to the scope of employment issue are for the district judge and which are for the jury." 995 F. 2d, at 1136, and n. 7 (joint opinion of Coffin, Selya, and Boudin, JJ., dissenting). Accord *Kimbro* v. *Velten*, 30 F. 3d 1501, 1507 (CADC 1994) ("[I]t would be impossible . . . to draw a distinction between a characterization of an incident and whether or not it actually occurred.").

[11] See *id.*, at 1505 (observing that the question here presented "tend[s] to arise in cases of alleged intentional torts").

[12] Under JUSTICE BREYER's view, when, in fact, "*nothing* involving the employee happened at all . . . no Westfall Act immunity would be available." *Post*, at 6–7. He thinks this "is just as it should be." *Post*,

*Willingham* v. *Morgan*, 395 U. S. 402 (1969), in which the Court construed the federal officer removal statute, 28 U. S. C. §1442, supports our reading of the Westfall Act.[13] Section 1442(a)(1) allows an officer of the United States to remove a civil action commenced in state court if the officer is "sued in an official or individual capacity for any act under color of such office." In *Willingham*, a federal inmate sued two federal prison officials in state court, alleging that they had assaulted, beaten, and tortured him. 395 U. S., at 403. The defendants removed pursuant to §1442(a)(1), and the District Court upheld their defense of official immunity. The Tenth Circuit reversed, reading §1442(a)(1) to permit removal only when a defendant "exclude[s] the possibility that the suit is based on acts or conduct not justified by his federal duty." *Morgan* v. *Willingham*, 383 F. 2d 139, 141 (1967). We rejected that narrow construction of the statute and held §1442 "broad enough to cover all cases where federal officers can raise a colorable defense arising out of the duty to enforce federal law." 395 U. S., at 406–407.

The plaintiff in *Willingham* disputed that the defendant federal officials had acted under color of office. He alleged that they "had been acting on a frolic of their own which had no relevancy to their official duties as employees or officers of the United States." *Id.*, at 407 (internal quotation marks omitted). The Court held that the officers "should have the opportunity to *present their version of the facts* to a federal, not a state, court." *Id.*, at 409 (emphasis

———————

at 7. We disagree. Congress did not, and sensibly should not, command that innocent employees be left outside the Westfall Act's grant of suit immunity. "Congress' statute and its policy," we agree, "both look in the opposite direction." *Wood*, 995 F. 2d, at 1136 (joint opinion of Coffin, Selya, and Boudin, JJ., dissenting).

[13] The notice of removal in this case invoked §1442 as well as §2679. In the Sixth Circuit, however, the Government did not urge §1442 as a separate ground for reversing the District Court.

added).

We see no reason to conclude that the Attorney General's ability to remove a suit to federal court under §2679(d)(2), unlike a federal officer's ability to remove under §1442, should be controlled by the plaintiff's allegations. In *Willingham*, the federal officer's "relationship to [the plaintiff] derived solely from their official duties." *Ibid.* Similarly here, Haley interacted with Osborn and Luber only through his employment as a Forest Service officer.[14] For purposes of removal under §1442(a), the defendants in *Willingham* were not required to accept the

_____

[14] In the context of §1442, we have held that, to qualify for removal, a federal official must show "a nexus . . . between the charged conduct and asserted official authority." *Jefferson County* v. *Acker*, 527 U. S. 423, 431 (1999) (citations and internal quotation marks omitted). We need not today decide whether qualification for Westfall Act immunity is similarly limited, for in this case, a nexus plainly exists connecting the incident Osborn alleged and Haley's federal employment. We note, however, that nothing in our opinion commits the Court to the view that Westfall Act immunity is available in fanciful situations like the one JUSTICE BREYER hypothesizes, *post*, at 1–2, in which the plaintiff's allegations are wholly unrelated to the defendant's federal employment.

JUSTICE BREYER posits the case of a Yellowstone Park forest ranger accused of misdeeds at Coney Island. He says we would find Westfall Act immunity—more accurately, we would uphold Westfall Act certification—even if the ranger's "presen[ce] on Coney Island must have been . . . on a frolic of his own." *Post*, at 1. If JUSTICE BREYER is imagining a case in which the ranger was in fact on a frolic at Coney Island, but the Attorney General nevertheless issued a Westfall Act certificate, we would not approve the certification. In that imaginary case, there would be no sense in which the ranger was acting within the scope of his employment *at the time* of the incident charged in the plaintiff's complaint. If, instead, JUSTICE BREYER has in mind a ranger accused of frolicking at Coney Island, when all the while he stayed close to his desk at Yellowstone Park, then JUSTICE BREYER is correct: Westfall Act immunity might be available under our approach. If such a case ever shows up in a federal court, however, the district judge might be called upon to determine whether removal and substitution under §2679(d)(2) are limited by a nexus requirement similar to the one that limits removal under §1442.

truth of the plaintiff's allegations that they were "on a frolic of their own," *id.,* at 407 (internal quotation marks omitted), and had tortured plaintiff "out of malice," 383 F. 2d, at 140 (internal quotation marks omitted). So here, for purposes of removal under §2679(d)(2), Haley and the Government were not required to accept as true Osborn's allegations that Haley "maliciously induced" her dismissal from LBLA "in retaliation for plaintiff filing a veterans' preference inquiry." Complaint ¶29, Luber App. 7. Haley, like the defendant in *Willingham*, may have been on frolic of his own as Osborn alleged, and therefore may not be entitled to immunity. But like the officers in *Willingham*, he should have the opportunity to "present [his] version of the facts to a federal . . . court." 395 U. S., at 409.

B

Tugging against our reading of the Westfall Act, we recognize, is a "who decides" concern. If the Westfall Act certification must be respected unless and until the District Court determines that Haley, *in fact*, engaged in conduct beyond the scope of his employment, then Osborn may be denied a jury trial. Compare *Wood*, 995 F. 2d, at 1126, 1130, with *id.*, at 1134–1138 (joint opinion of Coffin, Selya, and Boudin, JJ., dissenting). Should the District Court find that Haley did not maliciously induce Luber to discharge Osborn, but instead interacted with Luber and Osborn only within the proper bounds of his employment, Osborn will lose on the merits with no access to a jury of her peers.[15] "This is not a small objection," for the issue

———————

[15] The overlap of certification validity and the merits of the plaintiff's claim, evident here, is uncommon. It is unlikely to occur when the plaintiff alleges negligent conduct. The question whether a federal driver was acting within the scope of his employment at the time of an accident, for example, can generally be answered without simultaneously determining whether the federal employee drove negligently or carefully. And even when the plaintiff alleges an intentional tort, it may be possible to resolve the scope-of-employment question without

"that goes to the heart of the merits, as well as to the validity of the certificate," will likely turn on the credibility of Osborn, Haley, and Luber, and credibility "may be well suited for jury resolution." See *id.*, at 1136–1137.[16]

Under the Westfall Act, however, Congress supplanted the jury in covered cases. See §2679(d)(1)–(3). Upon certification, the action is "deemed to be . . . brought against the United States," *ibid.*, unless and until the district court determines that the federal officer originally named as defendant was acting outside the scope of his employment. The Seventh Amendment, which preserves the right to a jury trial in suits at common law, we have held, does not apply to proceedings against the sovereign. *Lehman* v. *Nakshian*, 453 U. S. 156 (1981). See also §2402 (actions against the United States ordinarily "shall be tried by the court without a jury"). Thus, at the time the district court reviews the Attorney General's certification, the plaintiff has no right to a jury trial. See *Kimbro*, 30 F. 3d, at 1509, n. 4.[17]

———————

deciding the merits of the claim. If a plaintiff charges a federal employee with sexual assault, for example, upon determining that there was sexual contact, a district court could find that the employee acted outside the scope of his duties, leaving the question whether the contact was consensual for jury resolution.

[16] But cf. 995 F. 2d, at 1137 (observing that "[i]n the ordinary tort claim arising when a government driver negligently runs into another car, jury trial is precisely what is lost to a plaintiff when the government is substituted for the employee").

[17] We do not address the case in which the Attorney General refuses certification. In that event, §2679(d)(3) allows the named defendant to "petition the court to find and certify that [he] was acting within the scope of his . . . employment." However, the Westfall Act gives the named defendant no right to remove an uncertified case. But see 28 U. S. C. §1442(a)(1). That right is accorded to the Attorney General only. Because the scope determination would be made in such a case before any substitution of the United States as defendant takes place, it is arguable that a jury trial of that issue would be required if the case is before a federal court. If the case was brought in a state court and the

Opinion of the Court

The Westfall Act's core purpose also bears on the appropriate trier of any facts essential to certification. That purpose is to relieve covered employees from the cost and effort of defending the lawsuit, and to place those burdens on the Government's shoulders. See *supra*, at 9–10. Immunity-related issues, the Court has several times instructed, should be decided at the earliest opportunity. See, *e.g.*, *Hunter* v. *Bryant*, 502 U. S. 224, 228 (1991) *(per curiam)* ("Immunity ordinarily should be decided by the court long before trial."); *Anderson* v. *Creighton*, 483 U. S. 635, 646, n. 6 (1987) ("[I]mmunity questions should be resolved at the earliest possible stage of litigation.").[18]

\*　　\*　　\*

For the reasons stated, the judgment of the United States Court of Appeals for the Sixth Circuit is

*Affirmed.*

———————

Attorney General declines to remove, the Seventh Amendment would not figure in the case, for it is inapplicable to proceedings in state court. *Minneapolis & St. Louis R. Co.* v. *Bombolis*, 241 U. S. 211, 217 (1916).

[18]JUSTICE BREYER suggests that, with respect to immunity defenses, our "reading of the Westfall Act works a major change in th[e] [ordinary] fact/law relationship." *Post*, at 5. Nothing in our opinion touches on that relationship in the typical case in which a defendant official raises a defense of absolute or qualified immunity. We simply observe that the Westfall Act grants federal employees a species of immunity, and that, under our jurisprudence, immunity-related questions should be resolved at the earliest opportunity. JUSTICE BREYER is right, however, to this extent. We recognize that judges have a greater factfinding role in Westfall Act cases than they traditionally have in other immunity contexts. The Act makes that inevitable. When Westfall Act immunity is in dispute, a district court is called upon to decide who the proper defendant is: the named federal employee, or the United States. That decision cannot be left for jury resolution late in proceedings without undermining the Westfall Act's very purpose: to shift the burden of defending the suit to the United States whenever the defendant-employee was, at the relevant time, acting within the scope of his employment.

# SUPREME COURT OF THE UNITED STATES

_____

No. 05–593

_____

## PAT OSBORN, PETITIONER *v.* BARRY HALEY ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[January 22, 2007]

JUSTICE SOUTER, concurring in part and dissenting in part.

I join the Court's opinion except for Parts II–B and II–C. Title 28 U. S. C. §1447(d) provides, with one exception not relevant here, that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." In sanctioning appellate review notwithstanding §1447(d), the Court relies on its determination that Congress, through §2679(d)(2), has prohibited remand in cases like this one, in order to give effect to the conclusive character of the Attorney General's certification on the issue of removal jurisdiction. But as we recently held, "'review is unavailable no matter how plain the legal error in ordering the remand.'" *Kircher* v. *Putnam Funds Trust*, 547 U. S. \_\_\_, \_\_\_ (2006) (slip op., at 7) (quoting *Briscoe* v. *Bell*, 432 U. S. 404, 414, n. 13 (1977)). Thus, rather than allowing §2679(d)(2) to trump §1447(d), I would reaffirm the rule that a district court's remand order is unreviewable even if it is based on an erroneous understanding of the district court's jurisdiction.[1] But I would not otherwise limit the Attorney General's (or the

_____

[1] The exception to §1447(d) created in *Thermtron Products, Inc.* v. *Hermansdorfer*, 423 U. S. 336 (1976), for remands not authorized by §1447(c) does not apply here because the District Court remanded the case for lack of subject matter jurisdiction, a ground enumerated in §1447(c).

employee's) efforts to give the intended effect to the certification prior to any remand that might be ordered.

I agree with the Court, therefore, that the Court of Appeals had jurisdiction to review the District Court's order resubstituting Haley as defendant. That order was not "[a]n order remanding a case to the State court from which it was removed," so by its own terms §1447(d) does not apply to review of that decision. Allowing review of a resubstitution order makes good on the promise of the Westfall Act: by permitting disaggregation of a remand order from a substantive determination about substitution that preceded it (in the manner exemplified by *Waco* v. *United States Fidelity & Guaranty Co.*, 293 U. S. 140 (1934)), it gives an employee-defendant a right to appeal any denial of the benefit of substituting the Government as defendant in costly litigation arising out of the employee's federal service.[2] The circumstances in which the Westfall Act was adopted, responding as it did to a series of our decisions that Congress saw as having "seriously eroded the common law tort immunity previously available to Federal employees," 102 Stat. 4563, note following 28 U. S. C. §2671, point to the importance Congress placed on giving a federal employee a full opportunity to seek this protection. Incidentally, of course, my reading of the statutes can give an appellate court the opportunity to correct a district court's erroneous understanding of the legitimacy of removal before any remand is effected, making it very unlikely that a mistakenly premised remand order will be carried out. If a district court resisted edification, however, the remand order would be conclusive

_____

[2] The circumstances of this case make it clear that *Waco* ought to endure as an exception to §1447(d), a question left open in *Kircher* v. *Putnam Funds Trust*, 547 U. S. ___, ___ (2006) (slip op., at 11, n. 13). A contrary rule would preclude appellate review not only of the remand order itself, but also of the refusal to substitute the Government as defendant.

against appeal, in accord with §1447(d). See *Kircher*, *supra*, at \_\_\_ (slip op., at 7).

In sum, my resolution of this case is a pair of half-loaves. The policy of avoiding litigation over remands is tempered by allowing appeals on the important matter of substitution. The policy behind making the Attorney General's certification conclusive is qualified by insulating a remand order from review, no matter how erroneous its jurisdictional premise. Neither policy has it all, but each gets something.

I would remand this case to the Court of Appeals for proceedings consistent with this understanding.

# SUPREME COURT OF THE UNITED STATES

No. 05–593

PAT OSBORN, PETITIONER *v.* BARRY HALEY ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[January 22, 2007]

JUSTICE BREYER, concurring in part and dissenting in part.

I agree with the Court's jurisdictional analysis and its disposition of the District Court's remand order and so join Parts I and II of the Court's opinion. But I dissent from Part III. I continue to believe that the Westfall Act permits the Attorney General to certify only when accepting, at least conditionally, the existence of some kind of "incident." But where the incident, if it took place at all, *must have* fallen outside the scope of employment, the Act does not permit certification. See *Wood* v. *United States*, 995 F. 2d 1122 (CA1 1993) (en banc).

Here, the Attorney General did claim, in the alternative, that *if* an incident took place (*i.e.*, if the federal employee Haley spoke to Osborn's employer with respect to Osborn's employment), any such incident would have fallen within the scope of Haley's employment. But, for procedural reasons, that alternative claim is not before us. *Ante*, at 7, n. 6. Hence I must consider this case as if it were quite a different kind of case, one in which what took place was either an incident *outside the scope of employment* or no incident at all. Consider, for example, an aggravated sexual assault, a theft of personal property, or an auto accident on Coney Island where the Government employee, say a Yellowstone Park forest ranger, if present on Coney Island must have been there on a frolic of his own.

The majority's approach finds Westfall Act immunity in cases of this kind. I would not.

For one thing, the Act's language suggests that it does not apply in such circumstances. The statute says that the Attorney General must certify that the employee "was acting within the scope of his office or employment *at the time of the incident out of which the claim arose.*" 28 U. S. C. §2679(d)(2) (emphasis added). The italicized words, read naturally, assume some kind of incident, the *characterization* of which (*e.g.*, as within the scope of employment) determines whether immunity attaches. By way of contrast, permitting purely incident-denying certifications, as the majority does, can only be squared with the Act's text if the Attorney General is required to supply the reviewing court with proof of what the employee *was* doing (and that such activities *were* within the scope of employment) "at the time of the incident"—a showing that would prove quite difficult in a case such as this, where the plaintiff has alleged that the tort was committed at some unknown time over a period of days, or weeks, or even longer.

For another, there is nothing to suggest the Westfall Act sought to provide immunity for tort claims necessarily falling outside the scope of federal employment. As its popular name suggests, the Act focused upon *Westfall* v. *Erwin*, 484 U. S. 292 (1988), an earlier case in which the Court considered whether, to obtain immunity from state-law tort suits, a federal official had to show not just that his conduct was "within the scope of [his] employment," but also that it was "*discretionary in nature.*" *Id.*, at 295 (emphasis added). The Court answered "yes." It held that a federal employee was *not* immune from a state-law tort suit, even for simple negligence, unless the employee could also show that his conduct was discretionary.

The Westfall Act basically seeks to overturn this holding. As this Court has said, "[w]hen Congress wrote the

Westfall Act . . . , the legislators had one purpose firmly in mind [namely] to override *Westfall* v. *Erwin*." *Gutierrez de Martinez* v. *Lamagno,* 515 U. S. 417, 425 (1995). The House Judiciary Committee wrote that the Act's "functional effect . . . is to return Federal employees to the status they held prior to the *Westfall* decision." H. R. Rep. No. 100–700, p. 4 (1988). And that "status," many thought, was an immunity that applied to nondiscretionary, as well as discretionary, actions that fell "within the scope" of the employee's "office or employment." 28 U. S. C. §2679(b)(1); H. R. Rep. No. 100–700, at 4.

In a word, the Act seeks to *maintain* the scope of pre-*Westfall* immunity *minus Westfall's "discretionary function" limitation.* That purpose does not encompass an extension of immunity to all-or-nothing conduct, *i.e.*, those serious assaults or personal "frolics" that, *if they took place at all,* could not possibly have fallen within the scope of the employee's "office or employment."

Further, to try to bring the latter type of conduct within the scope of the Act's immunity creates a series of anomalies. As the Court recognizes, its interpretation may limit the plaintiff's ability to obtain jury consideration of factual matters critical to his or her case. Indeed, *any* Government employee defendant, including a defendant whom the Attorney General does *not* want to defend, can ask the judge to issue a certificate. §2679(d)(3). On the Court's view of the statute, the issuance of the certificate could depend upon whether, for example, the aggravated sexual assault took place at all or whether the defendant was at Yellowstone or Coney Island at the relevant times. And, in deciding these questions (as the judge would have to do to determine whether the certificate should issue), the judge, not the jury, would decide the main issue in the case. (The Court declines to address the effect of its analysis on §2679(d)(3). *Ante*, at 24, n. 17. But the relevant language in this provision is virtually identical to the

language at issue in this case, see §2679(d)(2), so one cannot seriously suggest that the Act by its own terms affords employees any narrower a basis for seeking certification than it affords the Attorney General.)

It is highly unusual to permit special, speedy judge fact-finding where immunity is at issue. Ordinarily, when a party asserts an immunity defense, *i.e.*, an "entitlement not to stand trial *under certain circumstances,*" *Mitchell* v. *Forsyth*, 472 U. S. 511, 525 (1985) (emphasis added), special immunity-related procedures focus, not upon fact-finding, but upon the proper *legal characterization* of the facts as given. Where the parties' immunity-related disagreement amounts to a dispute about the *law*, namely whether the particular set of facts alleged by the plaintiff does, or does not, fall within the immunity's legal scope, the defendant is entitled to a quick determination of the legal question by the trial judge and, if necessary, an immediate interlocutory appeal. *Id.*, at 526, 530. See *Nixon* v. *Fitzgerald*, 457 U. S. 731, 742–743 (1982); see also *Helstoski* v. *Meanor*, 442 U. S. 500, 507–508 (1979). But where that disagreement amounts to a dispute about the *facts,* immunity law does *not* ordinarily entitle the defendant to special procedural treatment. Rather, the defendant must take the *facts* as the plaintiff asserts them. Like any other defendant, he can move for summary judgment. *Mitchell*, *supra*, at 526; *Anderson* v. *Creighton*, 483 U. S. 635, 646–647, n. 6 (1987). But if the plaintiff provides sufficient evidence to survive summary judgment, the defendant must win the case at trial.

Thus ordinarily an immunity defense provides special procedural treatment only for a defendant's legal claim that the facts *taken as the plaintiff asserts them* (or *taken as the assertions have survived a motion for summary judgment*) fall within the scope of the immunity. It does not provide special treatment for disputes about the facts. See, *e.g.*, *Johnson* v. *Jones*, 515 U. S. 304, 319–320 (1995)

(defendant raising immunity defense "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial"). The Court's reading of the Westfall Act works a major change in this fact/law relationship. Under the Court's reading, the defendant will have the right to ask the judge to determine the facts, *i.e.*, to determine whether the events plaintiff says occurred did in fact happen. And that is so *even where the plaintiff has enough evidence to bring the case to the jury*.

The Court's reading of the Act proves even more anomalous in the case of a federal employee claiming an assault that violates both (a) state tort law and (b) federal civil rights law. Suppose that the defendant's sole defense is "mistaken identity." The defendant argues that nothing took place between him and the plaintiff, that at the relevant time he was working peacefully at his desk. Under the Court's reading, the defendant is entitled to have the *judge* decide the factual question; and, should the judge decide in his favor (in respect to the state-law tort claim), collateral estoppel likely means an end of the matter in respect to the federal civil rights claim, as well. Yet the Westfall Act explicitly *exempts* from its scope any claim of "violation of a federal statute" or the Federal Constitution. 28 U. S. C. §2679(b)(2).

The Court rests much of its analysis on *Willingham* v. *Morgan*, 395 U. S. 402 (1969), but I do not think that case offers much support. *Willingham* addressed *only* a federal officer's right to remove a case to federal court (via §1442(a)(1)). *Id.*, at 403. Once there, the officer could pursue traditional immunity defenses, *i.e.*, based on the facts as alleged by the plaintiff or as they survived summary judgment; that is all the Court could have meant when it said that officers "should have the opportunity to present their version of the facts to a federal, not a state,

court," *id.*, at 409. Moreover, in *Mesa* v. *California*, 489 U. S. 121, 139 (1989), this Court held that "[f]ederal officer removal under 28 U. S. C. §1442(a) must be predicated upon averment of a federal defense." Because the federal employee defendants in *Mesa* "ha[d] not and could not present an official immunity defense" to the charges against them, removal was improper under §1442(a)(1). *Id.*, at 133. The majority reads the Westfall Act much more broadly than this Court read §1442(a) in *Mesa*, permitting removal in cases where there is unquestionably no official immunity defense available (at least as such defenses have been understood by this Court until today). And in so doing, the majority opens wide the door not just to removal, which was all that was at issue in *Willingham* and *Mesa*, but, much more consequentially, to substituting a judge's factfinding for a plaintiff's jury trial right.

I do not claim that my own reading of the Westfall Act will totally eliminate the difficulties I have mentioned. But an interpretation that reads the Act's language more literally will minimize them, while also largely mitigating the problem of clever pleading with which the majority is rightly concerned, *ante*, at 20. The Act says the "Attorney General" must certify that the "employee was acting within the scope of his office or employment *at the time of the incident* out of which the claim arose." §2679(d)(2) (emphasis added). As I have said, that language prevents the Attorney General from denying that any "incident" at all occurred without at least adding in the alternative that any incident the plaintiff might be able to show falls within the employee's scope of employment regardless.

Thus, if a plaintiff claims an *intentional* touching (outside the scope of employment), the Attorney General is free to claim (a) there was no touching but (b) were the evidence to show a touching, it was accidental (within the scope of employment). Yet if the plaintiff accuses the employee, a Yellowstone Park ranger, of negligent driving

on Coney Island, the Attorney General could not make a similar claim. (Nor could he likely do so in respect to an employee whom the plaintiff claims committed a serious sexual assault.) That is because if these latter incidents did happen, they must have fallen outside the scope of employment, while if they did not happen, then *nothing* involving the employee happened at all. In such cases no Westfall Act immunity would be available. And that is just as it should be.

This approach resembles, but differs in important respects from that of the First Circuit in *Wood*. In *Wood*, the First Circuit held that a judge reviewing a Westfall Act certificate could resolve factual conflicts as to "incident-describing and incident-characterizing facts," but must leave for the jury (if it came to that) disputes over whether any incident occurred at all. 995 F. 2d, at 1129. Here, I offer a compromise between *Wood* and the majority's more extreme approach. I would permit a judge reviewing a Westfall Act certificate to resolve *any* factual disputes relevant to whether the defendant was "acting within the scope of his office or employment," including, when necessary, determining whether the incident occurred at all. But I would only permit the judge to fulfill this factfinding function in those cases where the Attorney General (or the defendant employee, under §2679(d)(3)) can offer *some* plausible explanation of the alleged incident that would bring the defendant's actions within the scope of his federal office or employment.

The majority's approach, absent some undefined constraint that might be imposed in future cases, *ante*, at 22, n. 14, would permit factfinding by a judge (and, where the Attorney General requests, removal to federal court) in *any* state-law tort case involving a federal employee. I would permit judges to fulfill this rather extraordinary factfinding function only in those cases where the "injury or loss of property, or personal injury or death" for which

the plaintiff seeks recovery *might* have "aris[en] or re-sult[ed] from the negligent or wrongful act or omission of [the federal employee] while acting within the scope of his office or employment"—*i.e.*, where there is *some chance* the injury (if any) was caused by the kinds of actions for which the Act expressly grants employees immunity, under §2679(b)(1). This approach protects the innocent employee as well as the guilty, *ante*, at 20, but only in the class of law suits the Act can plausibly be read to cover.

Because the Court of Appeals interpreted the Act as does the Court, I would vacate its judgment. I would, however, permit the Court of Appeals to consider the Government's alternative assertion of immunity (including whether it was properly barred by the trial court), and to determine whether Westfall Act immunity applies on that basis.

For these reasons, I dissent from Part III of the Court's opinion.

# SUPREME COURT OF THE UNITED STATES

No. 05–593

PAT OSBORN, PETITIONER *v.* BARRY HALEY ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[January 22, 2007]

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

Few statutes read more clearly than 28 U. S. C. §1447(d): "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ."[1] That bar to appellate review is a venerable one, dating back to 1887, see *Thermtron Products, Inc.* v. *Hermansdorfer*, 423 U. S. 336, 343 (1976). It is, moreover, not just hortatory; it is jurisdictional. *Things Remembered, Inc.* v. *Petrarca*, 516 U. S. 124, 127–128 (1995). Yet beginning in 1976, this Court has repeatedly eroded §1447(d)'s mandate and expanded the Court's jurisdiction. Today's opinion eviscerates what little remained of Congress's Court-limiting command.

## I

The first narrowing of §1447(d) occurred in *Thermtron Products*, over the dissent of Justice Rehnquist joined by Chief Justice Burger and Justice Stewart (only eight Justices sat in the case). *Thermtron Products* held that remand orders *are* reviewable if they are based on any grounds *other* than the mandatory ground for remand set

---

[1] The remaining clause of §1447(d) provides an exception that is not applicable here: "except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise."

forth in §1447(c)—namely, that "'the case was removed improvidently and without jurisdiction.'"[2]  423 U. S., at 342.  That result followed, the Court said, because subsections (c) and (d) are "*in pari materia*" and "must be construed together."  *Id.,* at 345.  Thus, the unlimited phrase "[a]n order remanding a case" magically became "an order remanding a case under this section"—changing prior law, under which the Court had held that the predecessors of §1447(d) prohibited review of all remand orders.  See *id.,* at 354–356 (Rehnquist, J., dissenting).  Since, in *Thermtron Products*, the District Court had remanded solely because of its crowded docket, we accepted review and issued a writ of mandamus compelling reconsideration of the order.  See also *Quackenbush* v. *Allstate Ins. Co.*, 517 U. S. 706, 710–712 (1996) (reviewing a remand order predicated on abstention under *Burford* v. *Sun Oil Co.,* 319 U. S. 315 (1943)).[3]

The next phase in §1447(d)'s erosion came just last Term, in *Kircher* v. *Putnam Funds Trust*, 547 U. S. ___ (2006).  There, as here, the District Court had remanded to state court "on the ground that [it] lacked subject matter jurisdiction on removal."  *Id.,* at ___ (slip op., at 3).  That should have been the end of the matter, but it was not.  The *Kircher* majority embarked on a searching inquiry into whether the District Court's *real reason* for remand was lack of jurisdiction.  See *id.,* at ___ (slip op., at 7–11).  In my concurrence, I warned that "[r]eview of the sort engaged in . . . threatens to defeat the purpose of §1447(d)," which was "'to prevent delay in the trial of

_____

[2] Section 1447(c) has since been amended, specifying as grounds for mandatory remand that "the district court lacks subject matter jurisdiction."

[3] The *Thermtron Products* limitation upon the §1447(d) bar to appellate review does not affect this case.  As the Court recognizes, *ante*, at 6, the District Court was perfectly clear that its remand to state court was based on its lack of jurisdiction.

remanded cases by protracted litigation of jurisdictional issues.'" *Id.,* at \_\_\_–\_\_\_ (slip op., at 2–3) (quoting *Thermtron Products, supra,* at 351).

> "Such delay can be created just as easily by asking whether the district court correctly characterized the basis for its order as it can by asking whether that basis was correct . . . . Whether the District Court was right or wrong—even if it was so badly mistaken that it misunderstood the true basis for its orders—it *purported* to remand for lack of jurisdiction, and §1447(d) bars any further review." *Kircher*, 547 U. S., at \_\_\_–\_\_\_ (slip op., at 2–3).

Today's opinion goes even further than *Kircher.* Whereas that case at least *claimed* to be applying our precedents, see, *e.g.*, *id.*, at \_\_\_–\_\_\_ (slip op., at 7–8) (citing *Briscoe* v. *Bell*, 432 U. S. 404, 413–414, n. 13 (1977)), today's opinion makes no such pretense. Having recognized, as it must, that the District Court in this case invoked §1447(c) and remanded for lack of subject-matter jurisdiction, *ante*, at 6, the Court nevertheless reaches the amazing conclusion that §1447(d) does not "contro[l]" whether the remand order is reviewable on appeal. *Ante*, at 16.

How can that be? How can a statute explicitly eliminating appellate jurisdiction to review a remand order not "contro[l]" whether an appellate court has jurisdiction to review a remand order? The Court says the answer to this riddle lies in 28 U. S. C. §2679(d)(2). But that section says only that the Attorney General's certification is "conclusiv[e] . . . for purposes of *removal*" (emphasis added); it says absolutely nothing about the reviewability of remand orders. Thus, the most §2679(d)(2) can prove is that the District Court should not have remanded the case; that its remand order was erroneous. But our precedents make abundantly clear that §1447(d)'s appellate-review bar

applies with full force to erroneous remand orders. Just last Term we acknowledged that "a remand premised on an erroneous conclusion of no jurisdiction is unappealable." *Kircher*, *supra*, at ___ (slip op., at 8). See also *Thermtron Products*, *supra,* at 343 ("If a trial judge *purports* to remand a case on the ground that it was removed 'improvidently and without jurisdiction,' his order is not subject to challenge in the court of appeals by appeal, by mandamus, or otherwise" (quoting §1447(c) (1975 ed.) (emphasis added)); *Briscoe*, *supra*, at 414, n. 13 (where a remand order is based on one of the grounds enumerated in §1447(c), "review is unavailable no matter how plain the legal error in ordering the remand"). Today's opinion repudiates that principle. The *only* basis for its holding is that §2679(d)(2) renders the remand erroneous. This utterly novel proposition, that a remand order can be set aside when it is contrary to law, leaves nothing remaining of §1447(d). Determination of an order's lawfulness can only be made upon review—and it is precisely review that §1447(d) forbids.[4]

Congress knows how to make remand orders reviewable when it wishes to do so. See, *e.g.*, 12 U. S. C. §1441a(*l*)(3)(C) ("The Corporation may appeal any order of remand entered by a United States district court"); §1819(b)(2)(C) (same); 25 U. S. C. §487(d) ("[T]he United States shall have the right to appeal from any order of remand in the case"). Even §1447(d) itself exempts certain remand orders from its own appellate-review bar. See n. 1, *supra*. "Absent a clear statutory command to the contrary, we assume that Congress is aware of the univer-

_____

[4] Like the Court, I need not address whether allowing the case to remain in federal court after declining to substitute the United States as defendant would create an Article III problem. Unlike the Court, however, I choose not to address the point in dicta. See *ante*, at 16–17 (noting that "the question would only arise if" certain events take place, yet answering the question anyway).

sality of th[e] practice of denying appellate review of re-
mand orders when Congress creates a new ground for
removal." *Things Remembered*, 516 U. S., at 128 (internal
quotation marks omitted). As the Court recognized in
*Kircher*, "[t]here is no such 'clear statutory command' here,
and that silence tells us we must look to 28 U. S. C.
§1447(d) to determine the reviewability of remand orders
under the Act." 547 U. S., at \_\_\_, n. 8 (slip op., at 7, n. 8).
Were the Court in this case to look to §1447(d), instead of
looking for a way around §1447(d), the answer would be
abundantly clear.

## II

Respondents argued that, even if the remand order is
unreviewable on appeal, the District Court's rejection of
the Attorney General's certification should be reviewable
as a logically distinct determination, citing *Waco* v. *United
States Fidelity & Guaranty Co.*, 293 U. S. 140 (1934). See
*ante,* at 1–2 (SOUTER, J., concurring in part and dissenting
in part) (adopting this argument).

The continuing vitality of *Waco* is dubious in light of
more recent precedents, see *Kircher, supra*, at \_\_\_, n. 13
(slip op., at 11, n. 13). We need not address that question
here, however, since *Waco* is patently inapposite. There,
removal had been premised on diversity jurisdiction. The
District Court dismissed the party whose citizenship was
alleged to supply the requisite diversity, finding that
party's joinder improper, and thus remanded the case for
lack of jurisdiction. We found the dismissal order to be
reviewable on appeal, even though the remand order was
not. 293 U. S., at 143. But there is a crucial distinction
between that case and this one: In *Waco*, reversal of the
dismissal would not have subverted the remand. There
was *no question* that the suit would proceed in state court
regardless of whether the diverse party was rightfully or
wrongfully dismissed. Nowhere did the *Waco* Court so

much as hint that the District Court might need to reex-
amine its remand order; to the contrary, it was clear that
the remand would occur, no matter what: "If the District
Court's [dismissal] order stands, the cross-action will be no
part of the case which is remanded to the state court. . . . *A
reversal cannot affect the order of remand*, but it will at
least, if the dismissal of the petitioner's complaint was
erroneous, remit the entire controversy, with the [diverse
party] still a party, to the state court for such further
proceedings." *Id.,* at 143–144 (emphasis added). In other
words, the remand order and the dismissal order were
truly "separate orders," *id.,* at 142; we could review—even
reverse—the dismissal order without affecting the remand
or its impact on the case.

Today's case far more closely resembles *Kircher*. There,
the remand order had been predicated upon a finding that
the cause of action was not a "covered" class-action suit as
defined by the Securities Litigation Uniform Standards
Act of 1998 (SLUSA), 112 Stat. 3227, and therefore that
the federal courts lacked jurisdiction. The District Court
remanded so the suit could continue in state court, outside
the confines of SLUSA. If the suit had been "covered,"
SLUSA would have precluded the action from going for-
ward in any court, state or federal. 15 U. S. C. §77p(b).
We therefore determined that neither the remand itself
*nor the determination of SLUSA inapplicability* was re-
viewable on appeal: "The District Court's remand order
here cannot be disaggregated as the *Waco* orders could,
and if [we were to find the suit to be covered by SLUSA],
there [would be] nothing to remand to state court." 547
U. S., at ___–___, n. 13 (slip op., at 11–12, n. 13). That is
precisely the situation in this case: The remand here is
predicated upon a finding that the United States should
not be substituted as a defendant under the Westfall Act.
If we were to disagree with the District Court and substi-
tute the United States as a defendant, while at the same

time recognizing (as §1447(d) requires) that there is nothing we can do about the remand order, the case would go back to state court as an action under the Federal Tort Claims Act (FTCA), see *ante*, at 1, and the remanded case would be styled *Osborn* v. *United States*. But the state court would have to dismiss such a case at once, since federal courts have exclusive jurisdiction over FTCA suits. 28 U. S. C. §1346(b)(1). Thus, as in *Kircher*, but unlike *Waco*, the District Court's decision on the preliminary matter—here, Westfall Act certification; in *Kircher*, SLUSA applicability—is inextricably intertwined with the remand order. Since that is so, there is no jurisdiction to review either determination.

\*    \*    \*

In an all-too-rare effort to reduce the high cost of litigation, Congress provided that remand orders are completely unreviewable "on appeal or otherwise." Section 1447(d) effectuated a tradeoff of sorts: Even though Congress undoubtedly recognized that some remand orders would be entered in error, it thought that, all in all, justice would better be served by allowing that small minority of cases to proceed in state courts than by subjecting every remanded case to endless rounds of forum disputes. "[B]y denying any form of review of an order of remand," "Congress . . . established the policy of not permitting interrupting of the litigation of the merits of a removed cause by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed." *United States* v. *Rice*, 327 U. S. 742, 751 (1946). Today, in its uncompromising pursuit of technical perfection at all costs, this Court has repealed the tradeoff. One might suggest that Congress should restore it, but it is hard to imagine new statutory language accomplishing the desired result any more clearly than §1447(d) already does.

I would vacate the Sixth Circuit's judgment in its en-

tirety, since that court, like this one, plainly lacked jurisdiction.